<u>**Case No. 4:25-cv-04308**</u>

_____

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

_____

In the Matter of: Geden Holdings, Ltd.

       Debtor in a Foreign Proceeding.

_____

Geden Holdings, Ltd,

          Appellant,

v.

Advantage Award Shipping, LLC

          Appellee.[1]

_____

APPEAL from the UNITED STATES BANKRUPTCY COURT for the
Southern District of Texas, Houston Division

_____

BRIEF FOR APPELLANT

_____

**OKIN ADAMS BARTLETT
CURRY LLP**

Matthew S. Okin
Attorney in Charge
Texas Bar No. 00784695

---

[1] Advantage Award Shipping, LLC has not been found to have standing to participate in the underlying Chapter 15 Case, and, accordingly, does not have standing to participate in this appeal.

David L. Curry, Jr.
Texas Bar No. 24065107
Edward A. Clarkson, III
Texas Bar No. 24059118
1113 Vine Street, Suite 240
Houston, Texas 77002
Telephone: (713) 228-4100
Facsimile: (888) 865-2118

**COUNSEL FOR APPELLANT**

ii

## CERTIFICATE OF INTERESTED PERSONS

Case No. 25-cv-04308, *In re Geden Holdings, Ltd.*

The undersigned counsel of record certifies that appellant Geden Holdings, Ltd. has a parent company that owns 10% or more of its stock.

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Buselten Finance, S.A.[2] | 99.9% |

The undersigned counsel of record also certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 may have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification recusal.

Financially Interested Parties

     Advantage Award Shipping, LLC[3]

     Advantage Tankers, LLC

     Eclipse Liquidity, Inc.

     Samsung C&T Deutschland GMBH

---

[2] Information as of June 8, 2012. Note that due to the Foreign Representative's lack of information from Geden's former representatives, this information is being provided upon information and belief.

[3] As described in the footnote to the caption, it is the position of Geden Holdings, Ltd. that Advantage Award Shipping, LLC, and Advantage Tankers, LLC do not have a financial interest in the outcome of this Appeal; however, they are being included in the Certificate of Interested Persons to ensure compliance with Fifth Circuit Rule 28.2.1.

<u>Opposing Law Firms and Counsel</u>

      Attorneys for Advantage Award Shipping, LLC

      PACHULSKI STANG ZIEHL & JONES LLP
      D. Warner (TX Bar # 00792304)
      Jordan A. Kroop (admitted pro hac vice)
      Steven W. Golden (TX Bar # 24099681)
      700 Louisiana Street, Suite 4500 Houston, TX 77002
      Telephone: (713) 691-9385
      mwarner@pszjlaw.com
      jkroop@pszjlaw.com
      sgolden@pszjlaw.com

<u>Other Potentially Interested Law Firms</u>

      Attorneys for Eclipse Liquidity, Inc.

      GAITAS & CHALOS, P.C.
      Jonathan M. Chalos, Esq.
      George A. Gaitas, Esq.
      1908 N. Memorial Way
      Houston, Texas 77007
      Tel: 281-501-1800
      Fax: 832-962-8178
      chalos@gkclaw.com
      gaitas@gkclaw.com

      /s/ Matthew S. Okin
      Matthew S. Okin
      Attorney in Charge
      Texas Bar No. 00784695
      OKIN ADAMS BARTLETT CURRY LLP
      1113 Vine Street, Suite 240
      Houston, Texas 77002
      (713) 288-4100

      **COUNSEL FOR APPELLANT**

4903-0138-1235, v. 17

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument to assist the Court in resolving the complex and unsettled issues of bankruptcy law presented in the above-captioned appeal (the "Appeal"), primarily including the proper application of the statutory presumption that a foreign corporation's "center of main interests" is located in the country in which it is registered.

## <u>CITATIONS TO RECORD</u>

Citations to the record on appeal are designated "ROA" with the corresponding Bates number of the record cited located at the bottom right corner of each page of the record. Citations to the clerk's record [ECF No. 5] contain page numbers in the form of Bates number 0001 through 2626. Additionally, each cite will indicate which document the ROA number is referencing. Reference to the record will first indicate the ECF number followed by the Bates number as shown as follows "Title of Document" [ECF No. 5-_; ROA _____].

Citations to the transcripts from the June 4 and June 25, 2025 hearings in Case No. 25-cv-04308, *In re Geden Holdings, Ltd.* ("<u>Foreign Recognition Hearing</u>") will be cited as with the relevant page and line numbers identified (e.g. Foreign Recog. Hr'g xx:y).

4903-0138-1235, v. 17

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................................. v

CITATIONS TO RECORD ..................................................................................... vi

TABLE OF CONTENTS .......................................................................................... vii

TABLE OF AUTHORITIES ..................................................................................... x

INTRODUCTION .................................................................................................... 1

SUMMARY OF THE ARGUMENT ....................................................................... 4

I.      STANDING .................................................................................................... 4

II.     FOREIGN RECOGNITION, GENERALLY ................................................ 5

III.    THE CENTER OF MAIN INTERESTS AND THE 1516
        COMI PRESUMPTION ................................................................................ 6

IV.     ERRORS REGARDING THE APPLICATION OF THE 1516
        COMI PRESUMPTION AND THE LIQUIDATION
        ACTIVITIES TEST TO DETERMINE GEDEN'S COMI ........................... 7

STATEMENT OF ISSUES PRESENTED................................................................ 8

STATEMENT OF THE CASE ................................................................................. 10

I.      GEDEN'S CORPORATE AND MALTESE HISTORY............................... 10

        A.      The General Corporate History of Geden ........................................... 10

        B.      Geden's Court Ordered Dissolution in Malta ..................................... 11

II.     THE PERIOD BETWEEN THE RESIGNATION OF THE
        FIRST LIQUIDATOR.................................................................................... 14

        A.      Geden's Litigation Activities ............................................................... 14

        B.      The Pending Litigation in the United States Against
                Geden.................................................................................................... 14

III.   THE DISCOVERY OF THE MALTA PROCEEDING .............................. 16

IV.   THE APPOINTMENT OF DR. BALZAN AS THE
       LIQUIDATOR OF GEDEN ........................................................................ 16

V.    THE PURPOSE OF THE CHAPTER 15 CASE ......................................... 17

       A.    Geden's Alleged Fraudulent Transfers ............................................... 18

       B.    The Unauthorized Control of Geden in the United States ................. 19

       C.    Advantage Award ............................................................................... 20

VI.   PROCEDURAL BACKGROUND ............................................................. 20

       A.    The Chapter 15 Petition and Provisional Relief Motion .................... 20

       B.    The Foreign Recognition Hearing ...................................................... 21

       C.    Entry of the Memorandum Opinion and Order .................................. 23

STANDARD OF REVIEW ................................................................................ 24

ARGUMENT ...................................................................................................... 26

I.    THE BANKRUPTCY COURT ERRED BY (I) FAILING TO
       DETERMINE STANDING BEFORE REACHING THE
       MERITS, AND (II) RELYING ON EVIDENCE FROM A
       PARTY LACKING STANDING .................................................................. 27

       A.    The Bankruptcy Court Erred in Failing to Determine
              Standing Before Reaching the Merits .................................................. 27

       B.    If the Bankruptcy Court had Addressed Standing, It
              Would Have Found It Lacking ............................................................ 31

       C.    The Bankruptcy Court Erred by Allowing and Relying on
              Evidence from a Party Without Standing ............................................ 34

II.   THE BANKRUPTCY COURT ERRED BY (I) NOT
       APPLYING THE 1516 COMI PRESUMPTION, (II)
       MISAPPLYING THE "LIQUIDATION ACTIVITIES" TEST
       TO DETERMINE GEDEN'S COMI, AND (III) NOT
       FINDING THAT THE MALTA PROCEEDING WAS

4903-0138-1235, v. 17

EITHER A FOREIGN MAIN OR FOREIGN NONMAIN PROCEEDING ........................................................... 37

    A.    Recognizing a Foreign Proceeding and Statutory Predicate ...........................................................37

    B.    COMI.........................................................................39

    C.    The 1516 COMI Presumption .........................................40

    D.    The Bankruptcy Court Erred in Not Applying the 1516 COMI Presumption by Not Analyzing Contrary Evidence ...............42

    E.    The Bankruptcy Court Erred by Misapplying the "Liquidation Activities" Test ...........................................47

CONCLUSION ........................................................................54

CERTIFICATE OF SERVICE ...........................................................55

CERTIFICATE OF COMPLIANCE ......................................................57

4903-0138-1235, v. 17

# TABLE OF AUTHORITIES

## CASES

*A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 (WWE), 2013 U.S. Dist. LEXIS 173865 (D. Conn. Dec. 12, 2013)34

*Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011)...............................4

*ASARCO, Inc. v. Elliott Mgmt. (In re Asarco, L.L.C.)*, 650 F.3d 593 (5th Cir. 2011) ...................................................................................................................24

*Belsome v. Belsom (In re Belsome)*, 434 F.3d 774 (5th Cir. 2005) ........................25

*Cadle Co. v. Neubauer*, 562 F.3d 369 (5th Cir. 2009) ..................................... 28, 31

*Candelaria v. Health Care Serv. Corp.*, No. 17-404 KG/SMV, 2020 U.S. Dist. LEXIS 119651 (D.N.M. July 8, 2020)...................................................................34

*Chatz v. Alice Rhoads Living Tr. Dated June 1, 2012 (In re Rhoads)*, 572 B.R. 905 (Bankr. N.D. Ill. 2017) .........................................................................................41

citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) ...... 40, 42, 48

*Dean v. Seidel (In re Dean)*, 18 F.4th 842 (5th Cir. 2021)......................................24

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008) .............................................................................................24

*Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008) ...................................................................................................................27

*Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382 (5th Cir. 2018) 24, 27

*In re A.P.I., Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005).........................................34

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325 (S.D.N.Y. 2008) .............................................................................40

*In re Black Elk Energy Offshore Operations, LLC*, No: 15-342872020, 2020 Bankr. LEXIS 2248 (Bankr. S.D. Tex. Aug. 21, 2020) ...................... 4, 27, 32, 33

*In re Cape Quarry, LLC*, No. 19-12367 SEC, 2020 Bankr. LEXIS 3232 (Bankr. E.D. La. Nov. 16, 2020) ........................................................................28

*In re Comcoach Corp.*, 698 F.2d 571 (2nd Cir. 1983) ............................................31

*In re Creative Finance, Ltd. (In re Liquid)*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016)7, 50, 51, 52

*In re Culligan Ltd.*, No. 20-12192, 2021 Bankr. LEXIS 1783 (Bankr. S.D.N.Y. July 2, 2021) .............................................................................................40

*In re E.S. Bankest,* 321 B.R. 590 (Bankr. S.D. Fla. 2005).......................................31

*In re Giftcraft Ltd.*, Case No. 25-11030, 2025 Bankr. LEXIS 1350 (Bankr. S.D.N.Y. June 4, 2025)........................................................................41

*In re Heritage Real Estate Inv.*, Nos. 14-03603-NPO, 16-01156-NPO, 2020 Bankr. LEXIS 3656, at *16 (Bankr. S.D. Miss. Sep. 9, 2020) ................................ passim

*In re Hunt*, 149 B.R. 96 (Bankr. N.D. Tex. 1992) ...................................................30

*In re Intercement Brasil S.A.*, 668 B.R. 802 (Bankr. S.D.N.Y. 2025)....................41

*In re Ionosphere Clubs*, 101 B.R. 844 (Bankr. S.D.N.Y. 1989).............................31

*In re Iovate Health Scis. Int'l Inc.,* Case No. 25-11958, 2025 Bankr. LEXIS 2284 (Bankr. S.D.N.Y. September 12, 2025)................................................................41

*In re Jones*, No. 22-50121, 2023 Bankr. LEXIS 2292 (Bankr. M.D.N.C. June 15, 2023) ...................................................................................................42

*In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63 (Bankr. S.D.N.Y. 2011) .............................................................................39

*In re Modern Land (China) Co.*, 641 B.R. 768 (Bankr. S.D.N.Y. 2022)...............40

*In re Moye*, Nos. 07-37770, 07-37364, 2012 Bankr. LEXIS 3619 (Bankr. S.D. Tex. Aug. 7, 2012) ............................................................................. 28, 32

xi

*In re Ocean Rig UDW Inc.*, 570 B.R. 687 (Bankr. S.D.N.Y. 2017)......................43

*In re Orchard at Hansen Park, LLC*, 347 B.R. 822 (Bankr. N.D. Tex. 2006)........31

*In re Rhinesmith*, 450 B.R. 630 (Bankr. W.D. Tex. 2011) ......................................30

*In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237 (Bankr. S.D.N.Y. 2019)...................................................................................................40

*In re Telefoncia del Peru S.A.A.*, No. 25-90022 (ARP) (Bankr. S.D. Tex. Feb. 25, 2025).............................................................................................................46

*In re Think3 Inc.*, Case, No. 11-11925, 2011 Bankr. LEXIS 5349 (Bankr. W.D. Tex. Sep. 12, 2011)..................................................................................... 40, 48

*In re Tour Train P'ship*, 15 B.R. 401 (Bankr. D. Vt. 1981)............................. 35, 36

*In re Transamerican Nat. Gas Corp.*, 978 F.2d 1409 (5th Cir. 1992)....................42

*In re Tri-Continental Exchange Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal 2006)..........39

*In re Underwood*, 583 B.R. 438 (Bankr. E.D. Mich. 2018) ...................................35

*In re Williams*, No. 24-33706, 2025 Bankr. LEXIS 2369 (Bankr. S.D. Tex. Sep. 22, 2025)..............................................................................................................41

*Kane v. National Union Fire Ins. Co.*, 535 F.3d 380 (5th Cir. 2008) ....................31

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).....................45

*Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*, 505 F.3d 109 (2d Cir. 2007) ........................................................................................... 34, 35

*Lavie v. Ran (In re Ran)*, 607 F.3d 1017 (5th Cir. 2010) ............................... passim

*Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, No. 05-60006, 2006 U.S. Dist. LEXIS 85691(S.D.N.Y. Nov. 16, 2006)..............................................................................................................34

xii

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127 (2nd Cir. 2013) ........................................................................... 39, 51, 52

*OneBeacon America Ins. Co. v. A.P.I., Inc.*, No. 06-167, 2006 U.S. Dist. LEXIS 34297 (D. Minn. 2006) ....................................................................... 35

*Osherow v. Wells Fargo Home Mortg., Inc. (In re Rhinesmith)*, 450 B.R. 630, (Bankr. W.D. Tex. 2011) ......................................................... 27, 28

*Phillips v. Tow (In re Phillips)*, No. H-15-2706, 2016 U.S. Dist. LEXIS 77734 (S.D. Tex. June 15, 2016) ......................................................... 35

*Reneker v. Offill*, No. 3:08-CV-1394-D, 2012 U.S. Dist. LEXIS 83017 (N.D. Tex. June 14, 2012) ............................................................................ 45

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) ................................. 30

*Roe v. E. Baton Rouge Par. Sch. Bd.*, No. 23-1324-SDD-SDJ, 2024 U.S. Dist. LEXIS 183549 (M.D. La. Oct. 3, 2024) .............................................. 45

*Rollins v. Dignity Health*, 338 F. Supp. 3d 1025 (N.D. Cal. 2018) ........................ 45

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................. 30

*Thomas v. Fannie Mae (In re Thomas)*, 469 B.R. 915 (B.A.P. 10th Cir. 2012) ... 28, 32

*United States DOD v. AFGE*, No. 6:25-cv-00119-ADA, 2025 U.S. Dist. LEXIS 142239 (W.D. Tex. July 23, 2025) ............................................... 36

## STATUTES

11 U.S.C. § 101 ................................................................................................ 38
11 U.S.C. § 1502 .............................................................................................. 38
11 U.S.C. § 1515 .............................................................................................. 38
11 U.S.C. § 1517 ...................................................................................... 5, 6, 37
28 U.S.C. § 1334 ................................................................................................ 3
28 U.S.C. § 158 .................................................................................................. 3

## TREATISES

Bankruptcy Evidence Manual § 301:4 (2022 ed.) ........................................... 51

xiii

**REGULATIONS**

Regulations [99-163] of the Merchant Shipping (Shipping Companies – Private
    Organisations), Regulations, 2004 ........................................................ 11, 12, 17

## <u>INTRODUCTION</u>

On September 16, 2016, Geden Holdings, Ltd., ("<u>Geden</u>" or "<u>Appellant</u>") a corporation registered in Malta, was ordered by the First Hall of the Civil Court (the "<u>Maltese Court</u>") to wind down and liquidate upon a finding that it was insolvent and unable to pay its debts, thereby initiating a liquidation proceeding (the "<u>Malta Proceeding</u>").  Under Maltese law, all control of Geden then vested in the Maltese Court-appointed liquidator.

The first appointed liquidator was eventually forced to resign due to the refusal of the former representatives of Geden to provide him with essential information.  The Malta Proceeding then sat dormant for years.  Nevertheless, Geden purportedly continued to appear in and defend itself in litigation across the United States and specifically in Pennsylvania state court.  Ultimately, Eclipse Liquidity, Inc. ("<u>Eclipse</u>"), a counter-party in the Pennsylvania litigation, learned of the Malta Proceeding and that Geden's actions had not been countenanced by the Maltese Court.  Eclipse then sought and obtained the appointment of a new liquidator in Malta to finally bring order to Geden's activities.

On April 28, 2025, the Geden's newly appointed foreign representative caused Geden to file a petition for foreign recognition seeking to have the Malta Proceeding recognized as a foreign proceeding in the United States.  The bankruptcy court held hearings to consider Geden's petition for recognition.

Citing evidence and arguments adduced by Advantage Award Shipping, LLC ("Advantage Award") without first determining whether Advantage Award had standing to participate, the bankruptcy court denied the foreign recognition of the Malta Proceeding.  In doing so, the bankruptcy court committed reversible error.  Specifically, and as more fully discussed herein, the bankruptcy court erred in allowing Advantage Award to prosecute its objection without first establishing its standing to do so and then, again, in failing to follow the clear statutory language of 11 U.S.C. 1516(c) and recognizing Malta as a foreign main proceeding.

## STATEMENT OF JURISDICTION

The Appeal arises from the *Order Denying Petition for Recognition (ECF No. 1) and Dismissing Motion to Strike as Moot (ECF No. 32)* (the "Order") [ECF No. 5-9; ROA 2462] and the *Memorandum Opinion Denying Petition for Recognition (ECF No. 1) and Dismissing Motion to Strike as Moot (ECF No. 32)* [ECF No. 5-9; ROA 2441-2461] (the "Memorandum Opinion") both entered on August 28, 2025 by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") in the bankruptcy case styled *In re Geden Holding, Ltd.* [Case No. 25-90135] (the "Bankruptcy Case") denying Geden's *Chapter 15 Petition for Recognition of a Foreign Proceeding* [ECF No. 5-3; ROA 0010-0042]. The Bankruptcy Court had jurisdiction to enter the Order pursuant to 28 U.S.C. § 1334(b). The Order is a final order, and this Court has jurisdiction to hear the Appeal pursuant to 28 U.S.C. § 158(a).

Appellant timely filed his *Notice of Appeal of the Order and Memorandum Opinion* [ECF No. 5-9; ROA 2463-2465] (the "Notice of Appeal") on September 10, 2025, thirteen (13) days after the Bankruptcy Court entered the Order pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1).

3

## SUMMARY OF THE ARGUMENT

This Appeal stems from the Bankruptcy Court's denial of foreign recognition of the Malta Proceeding and is predicated upon a unique set of facts and circumstances that ultimately led the Bankruptcy Court to misapply unambiguous statutory requirements set out by Congress regarding foreign recognition. This Appeal, however, provides an opportunity to properly apply Fifth Circuit law regarding recognition of foreign proceedings and give bankruptcy practitioners a clear standard for the requirements of foreign recognition.

As will be shown herein, the Bankruptcy Court made multiple reversible errors in reaching its determination that the COMI of Geden was not in Malta and therefore ultimately denying recognition of the Malta Proceeding as a foreign main proceeding. Those errors fall into two distinct categories: errors relating to standing and errors relating to Geden's COMI determination.

## I.    STANDING

As an initial matter, the Bankruptcy Court erred by not first deciding the gate-keeping issue of Advantage Award's standing to participate in the Bankruptcy Case. In the Fifth Circuit, for a party to participate in a legal proceeding, it must first establish that it has standing. *In re Black Elk Energy Offshore Operations, LLC*, No: 15-342872020, Bankr. LEXIS 2248, at *13 (Bankr. S.D. Tex. Aug. 21, 2020) (citing *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 145, (2011)).

4

The Bankruptcy Court therefore erred by allowing Advantage Award to participate in the Bankruptcy Case, adduce testimony and present evidence at the Foreign Recognition Hearing, and then relying on Advantage Award's contributions to the case in rendering the Memorandum Order.

## II.    FOREIGN RECOGNITION, GENERALLY

Even if Advantage Award had standing, which it did not, the Bankruptcy Court misapplied the standard set out by Congress to recognize foreign proceedings.  Section 1517(a) of the Bankruptcy Code provides that, after notice and hearing, a court **shall** enter an order recognizing a foreign proceeding if: "(1) such foreign proceeding is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502, (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515."  11 U.S.C. § 1517 (a).

Here, it was undisputed by any party that the Geden's foreign representative satisfies both 1517(a)(2), which requires that the foreign representative be a person or body, and section 1517(a)(3), which incorporates section 1515's requirement that the petition for recognition be accompanied by a certified copy of the decision commencing such foreign proceeding (or a similar document).  April 15, 2025 Maltese Court Appointment Order ("Appointment Order") [ECF No. 5-9, ROA 2067-2068]; June 15, 2017 Maltese Dissolution Order ("Dissolution Order") [ECF

No. 5-9, ROA 2047-2066].  Finding that all other statutory factors had been met, the only statutory factor left for determination was whether the Malta Proceeding is (1) a foreign proceeding and (2) whether such foreign proceeding is a "foreign main or foreign nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code."  11 U.S.C. § 1517 (a)(1).

The Bankruptcy Court found that the Malta Proceeding was, in fact, a foreign proceeding.  Mem. Op. [ECF No. 5-9; ROA 2449].  The Bankruptcy Court then turned to whether the Malta Proceeding was either a foreign main or nonmain proceeding.

## III.  THE CENTER OF MAIN INTERESTS AND THE 1516 COMI PRESUMPTION

Under section 1516(c), "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests" (the "1516 COMI Presumption").  11 U.S.C. § 1516(c).  Here, the Bankruptcy Court erred by failing to apply the 1516 COMI Presumption.

Importantly, the Bankruptcy Court below **did not** find sufficient contrary evidence to rebut the 1516 COMI Presumption. Instead, contrary to the plain and unambiguous statutory language, the Bankruptcy Court held that the 1516 COMI Presumption only applied in "easy cases" and declined to apply the presumption notwithstanding the complete "absence of evidence to the contrary."  11 U.S.C. § 1516(c).

6

## IV.   ERRORS REGARDING THE APPLICATION OF THE 1516 COMI PRESUMPTION AND THE LIQUIDATION ACTIVITIES TEST TO DETERMINE GEDEN'S COMI

The Bankruptcy Court committed further error in its COMI analysis when it misapplied the "liquidation activities test" found in *In re Creative Finance, Ltd. (In re Liquid)*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016). The "liquidation activities test" was devised by the Second Circuit Court of Appeals as a means of distinguishing between two jurisdictions that could plausibly serve as a corporation's COMI or determine whether a corporation's COMI switched from one jurisdiction to another. Essentially, it is a tiebreaking factor or a factor meant to capture the movement of a corporation's COMI.

To reach this test, the Bankruptcy Court was required to first find a plausible COMI jurisdiction for Geden other than Malta. The Bankruptcy Court made no such finding, as it could not have, because the record contains no evidence that Geden's COMI exists anywhere other than Malta. Instead, the Bankruptcy Court impermissibly relied upon Advantage Award's cursory statement, made without legal or evidentiary support, that Malta was a "letterbox jurisdiction" and concluded that such an allegation required application of the liquidation activities test. Indeed, the Bankruptcy Court hinged the entire case on the outcome of this rarely used test instead of relying on the widely-accepted factors listed in *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1020 (5th Cir. 2010).

7

## STATEMENT OF ISSUES PRESENTED

At issue in this Appeal is whether the Bankruptcy Court erred in denying Geden's petition for foreign recognition of the Malta Proceeding pending before the Maltese Court.

In reaching its decision to deny foreign recognition of the Malta Proceeding, the Bankruptcy Court made multiple reversible errors.

First, the Bankruptcy Court erred when it failed to resolve Appellant's challenge to Advantage Award's standing by dismissing the Appellants motion to strike Advantage Award's objection as moot. The Bankruptcy Court never determined whether Advantage Award had standing to participate as a "party in interest" under Federal Rule of Bankruptcy Procedure 1012(a). Instead, the Bankruptcy Court allowed Advantage Award to participate at the hearing and erred when it relied upon the evidence and testimony presented by Advantage Award to make its findings in the Order and Memorandum Opinion.

Second, the Bankruptcy Court failed to properly apply the 1516 COMI Presumption in determining Geden's COMI, despite lacking contrary evidence.

Third, the Bankruptcy Court failed to follow established Fifth Circuit precedent and misapplied Second Circuit law in requiring that "liquidation activities" were required to prove that Geden's COMI exists in Malta when the Bankruptcy Court (i) was not presented with any evidence supporting a finding

8

that Geden's COMI was anywhere other than Malta; and (ii) did not make the requisite finding of an alternate jurisdiction justifying application of the liquidation activities test.

## STATEMENT OF THE CASE

I.    GEDEN'S CORPORATE AND MALTESE HISTORY

A. The General Corporate History of Geden

Geden has been organized and registered under the laws of Malta since October 14, 2002. April 29, 2025 Declaration of Geden's Foreign Representative ("Balzan Declaration") [ECF No. 5-9; ROA 2171]. Its registered office was located at 85 Saint Johns Street, Valletta, Malta. *Id*.

Geden principally existed to purchase and hold shares in its various subsidiary companies which chartered and operated vessels transporting oil products and other cargo internationally. *Id*. Geden also acted as treasurer of its subsidiaries by securing financing for and lending to its subsidiaries. *Id*. Additionally, Geden was previously registered as a foreign corporation in the State of Pennsylvania. *Id*. [ECF No. 5-9, ROA 2160].

According to a declaration filed by Geden on October 14, 2016 with the Malta Business Registry, the last recorded directors of Geden were Mehmet Bulent Ergin, Memet Mat, and Ali Tugrul Tokgoz. *Id*. [ECF No. 5-9, ROA 2159-2160]. Upon information and belief, as of October 14, 2018, Mehmet Emin Karamehmet ("Karamehmet") was the ultimate beneficial owner of Geden through his indirect ownership of shares/voting rights exceeding twenty five percent (25%). *Id*. Until June 15, 2017, Geden was controlled by Karamehmet through various holding companies and subsidiaries. *Id*. [ECF No. 5-9, ROA 2160].

10

## B. Geden's Court Ordered Dissolution in Malta

On September 16, 2016, Samsung C&T Deutschland GMBH filed suit against Geden requesting that the Maltese Court declare Geden insolvent and to have Geden dissolved and wound up under Maltese law. Dissol. Order [ECF No. 5-9, ROA 2057].

On June 15, 2017, Geden was found unable to pay its debts and was ordered dissolved and to be wound up under Regulations [99-163] of the Merchant Shipping (Shipping Companies – Private Organisations), Regulations, 2004 (the "Regulations") by order of the Maltese Court. *Id*. [ECF No. 5-9, ROA 2047-2066].

### 1. *The Effect of the Dissolution Order and the Appointment of a First Liquidator*

After the Dissolution Order was entered, Geden was deemed dissolved as of September 16, 2016. Balzan Decl. [ECF No. 5-9, ROA 2161]; *see also* Regs. at § 105(2) [ECF No. 5-4; ROA 0315].

Under Maltese law, "[o]n the appointment of a liquidator all the powers of the directors shall cease without prejudice to the right of the directors to act in accordance with the provisions of this Sub-Part in so far as authorised by the memorandum and articles." Balzan Decl. [ECF No. 5-9, ROA 2161]; Regs. at § 129(2). [ECF No. 5-4; ROA 0324]. Additionally, the liquidator is appointed to act on behalf of the "winding up" company to "take into his custody or under his

11

control all the property and all rights to which he has reasonable cause to believe the company to be entitled." Balzan Decl. [ECF No. 5-9, ROA 2161]; Regs. at § 109. [ECF No. 5-4; ROA 0316]. The liquidator is authorized to:

      a.    bring or to defend any action or other legal proceeding in the name and on behalf of the company;

      b.    carry on the business of the company so far as may be necessary for the beneficial winding up thereof;

      c.    pay creditors according to their ranking at law;

      d.    make any compromise or arraignment with creditors or persons claiming to be creditors, or having or alleging themselves to have any claim, present or future, certain or contingent, ascertained or which may be due in damages against the company or whereby the company may be rendered liable, and to refer such matter to arbitration;

      e.    represent the company in all matters and to do all such things as may be necessary for winding up the affairs of the company and distributing its assets.

Balzan Decl. [ECF No. 5-9, ROA 2161- 2162]; Regs. at § 109 [ECF No. 5-4; ROA 0316].

Thus, following entry of the Dissolution Order and the appointment of a liquidator, all of Geden's decision-making authority was (or should have been) vested in the Maltese liquidator, subject only to the Maltese court's review. Balzan Decl. [ECF # 5-9; ROA 2171].[4]

---

[4] The liquidation and the decisions of the court appointed liquidator "shall be subject to the control of the court, and any interested person may apply to the court with respect to any exercise

2.    *The First Liquidator's Appointment and Resignation*

The Dissolution Order appointed Mr. Paul Darmanin as liquidator ("First Liquidator") and obtained the rights and obligations stipulated by Regulations 107-116, the Regulations granting the Maltese liquidator sole authority over Geden. Balzan Decl. [ECF No. 5-9, ROA 2162].

The First Liquidator contacted and met with the former representatives of Geden, Mehmet Bulent Ergin, Memet Mat, and Ali Tugrul Tokgoz, and Karamehmet, in Malta to begin Geden's liquidation process.    Resignation of the First Liquidator ("Resignation") [ECF No. 5-9, ROA 2072].    This was the last cooperative act undertaken by Geden's former representatives.

The First Liquidator requested basic and preliminary documents from Geden's former representatives and received very little in return.    In fact, the information received was so limited, he could not confidently run a conflict check to determine whether he was conflicted from liquidating Geden.    Balzan Decl. [ECF No. 5-9, ROA 2162].

Based on this lack of cooperation, on September 12, 2018, the First Liquidator submitted his resignation.    Therein, he stated "that the ex-representatives and the shareholders were not disposed to participate in the process and not even to cover the expenses."    Resignation [ECF # 5-9, ROA 2072].    On

---

or proposed exercise of any of those powers."  Balzan Decl. [ECF No. 5-9, ROA 2162]; Regs. at

September 19, 2018, the Maltese Court granted the First Liquidator's application resignation. *Id*. [ECF No. 5-9, ROA 2073].

## II.    THE PERIOD BETWEEN THE RESIGNATION OF THE FIRST LIQUIDATOR

### A. Geden's Litigation Activities

With the resignation of the First Liquidator that was directly caused by the lack of cooperation of Geden's former representatives, Geden was precluded from taking action to liquidate its operations for the benefit of creditors from September 19, 2018 through December 23, 2023. *See generally* Balzan Decl. [ECF No. 5-9; ROA 2159]; *see also supra* note 3 and the authorities cited therein. However, despite lacking even apparent authority to do so, Geden was actively defending itself in multiple lawsuits in the United States, including, but not limited to, a lawsuit brought by Eclipse in the state of Pennsylvania. Balzan Decl. [ECF No. 5-9; ROA 2166-2169].

### B. The Pending Litigation in the United States Against Geden

On March 6, 2020, Eclipse, as judgment creditor of Geden, filed an Original Complaint, in Pennsylvania state court (the "Pennsylvania Complaint") naming Geden, Advantage Award, and Advantage Tankers, LLC ("Advantage Tankers") as defendants to enforce a judgement rendered by the High Court of the United Kingdom regarding the breach of a performance guarantee (the "Performance

---

§ 110(3) [ECF No. 5-4; ROA 0317].

Guarantee") executed by Geden in favor of Eclipse for the purchase of the motor tanker 'AVOR' (the "2020 Action")  Penn. Compl. [ECF No. 5-9; ROA 2078-2144].   The Pennsylvania Complaint alleges, among others, that (i) Advantage Award and Advantage Tankers are liable to Eclipse as successor corporations of Geden; (ii) Eclipse should be allowed to pierce the corporate veils of Advantage Tankers and Advantage Award because they have committed fraud to the detriment of Geden's creditors; and (iii) the transfer of Geden's assets to Advantage Award is a fraudulent transfer under the Pennsylvania Uniform Fraudulent Transfer Act. Balzan Decl. [ECF # 5-9; ROA 2166].

Additionally, on or about June 27, 2023, Eclipse filed an additional complaint in Pennsylvania state court asserting abuse of process claims (the "Abuse of Process Action") against the defendants in the 2020 Action and additionally naming Karamehmet's daughter, Gulsun Nazli Karamehmet Williams ("Gulsun Williams") and her husband, Brian Williams ("Brian Williams"). *Id.* The Abuse of Process Action asserts that Advantage Award, Advantage Tankers, Gulsun Williams, and Brian Williams committed the tort of abuse of process frustrating Eclipse's discovery and delayed the discovery to the point that it was rendered useless as a tool of obtaining admissible evidence. *Id.*

Ultimately, the Pennsylvania state court granted summary judgment favor of the defendants in the 2020 Action and the Abuse of Process Action. *Id.* [ECF No.

5-9; ROA 2168]. Eclipse has appealed both dismissal orders. *Id*. [ECF No. 5-9; ROA 2168-2169]. While initially set for oral argument on May 13, 2025, the appeals were stayed by the Pennsylvania Court of Appeals upon learning of the pending Bankruptcy Case.

## III.    THE DISCOVERY OF THE MALTA PROCEEDING

During the pendency of the litigation pending in Pennsylvania, Eclipse discovered that Geden had been in liquidation in Malta since 2017. Since Geden lacked authority to act other than through the Maltese Court-appointed liquidator, Eclipse moved the Pennsylvania State Court to order the attorneys purporting to represent Geden to prove their authority to act on Geden's behalf. Balzan Decl. [ECF No. 5-9; ROA 2167]. The Pennsylvania State Court stated that Eclipse's request was moot as Geden was the prevailing party in the litigation.

## IV.    THE APPOINTMENT OF DR. BALZAN AS THE LIQUIDATOR OF GEDEN

On or about December 4, 2023, Eclipse sought the appointment of a new liquidator in the Maltese Court in the Malta Proceeding. *Id*. [ECF No. 9; ROA 2168]. The Maltese Court independently appointed Dr. Reuben Balzan, a licensed advocate in Malta with the law firm Valletta Legal, as Geden's new liquidator (the "Foreign Representative"). Balzan Appt. Order [ECF No. 5-9, ROA 2067-2068].

Upon the Foreign Representative's appointment, he learned that Geden had been actively defending itself in Pennsylvania and other United States

16

jurisdictions. Balzan Decl. [ECF No. 5-9, ROA 2163]. Since Geden must be represented in legal proceedings by its liquidator under Section 110[5] of the Regulations—and was not so represented—it is unclear who was directing Geden and for what purpose. *Id*. [ECF No. 5-9, ROA 2162]. This revelation presented significant concerns that Geden may still be under the control of its former representatives.

## V.    THE PURPOSE OF THE CHAPTER 15 CASE

The Foreign Representative sought foreign recognition of the Malta Proceeding for four main purposes. First, to determine who has been controlling Geden during the pendency of its liquidation and take appropriate action to secure control of any further Geden operations in the United States. *Id*. [ECF No. 5-9; ROA 2169]. Second, to identify and preserve any assets of Geden located in the United States. *Id*. Third, to identify, preserve, and, potentially, prosecute any claims and causes of action related to the misappropriation of Geden's liquidation in the United States. *Id*. Fourth, to stay the appeals in Pennsylvania state court and avoid any loss of Geden's rights due to an unauthorized party acting on its behalf. *Id*.

---

[5] "The liquidator in a winding up by the court shall have the power, with the sanction either of the court or of any liquidation committee . . . to bring or to defend any action or other legal proceeding in the name and on behalf of the company." Regs. at § 110(1)(a) [ECF No. 5-4; ROA 0316-0317].

Upon his appointment, the Foreign Representative reviewed the Pennsylvania Complaint in analyzing whether to file a chapter 15 case in the United States.[6]  Foreign Recog. Hr'g 57:16-5:6 [ECF No. 5-10; ROA 2546-2547]. The Pennsylvania Complaint raises serious issues and questions that potentially implicate the duties and obligations of the Foreign Representative, such as the investigation and potential prosecution of any alleged fraudulent transfers.  The Foreign Representative believes that in his role liquidator, he is obligated to "examine any allegation which is made regarding the operations of the company." *Id*.

### A. Geden's Alleged Fraudulent Transfers

The Pennsylvania Complaint alleges, among other things, that Geden fraudulently transferred substantially all of its assets to an entity or entities controlled by Karamehmet's daughter, Gulsun Williams, for less than reasonably equivalent value. Balzan Decl. [ECF No. 5-9, ROA 2165].  These transfers likely led to Maltese Court entering the Dissolution Order finding that Geden was not in a position to pay its debts and ordered to liquidate.  Dissol. Order [ECF No. 5-9; ROA 2066]

---

[6] The Pennsylvania Complaint and its associated exhibits were not offered for the truth of the matters asserted therein, but only to establish what he had reviewed.  Foreign Recog. Hr'g 57:16-5:6 [ECF No. 5-10; ROA 2546-2547].

18

Specifically, Eclipse alleges in its Pennsylvania Complaint that Value Shipping, Ltd., an entity controlled by Geden, transferred the vessel, 'ADVANTAGE AWARD,' to Advantage Award at some point in 2015. Balzan Decl. [ECF No. 5-9, ROA 2165]. Eclipse further alleges that Advantage Award is 100% owned by Advantage Tankers. *Id*.

### B. The Unauthorized Control of Geden in the United States

Upon information and belief, Advantage Tankers and Advantage Award (both controlled by the former principals of Geden) are comprised of the same set (or substantially similar set) of former representatives that refused to participate in Geden's court-ordered liquidation in Malta and are impermissibly controlling Geden in the United States and elsewhere. Pennsylvania Compl. [ECF No. 5-9; ROA 2099]. Because Geden is in liquidation in Malta, Geden has a fiduciary duty to "wind down" its operations for the benefit of its creditors. The positions taken by Geden in the Pennsylvania litigation and elsewhere contradict the primary purpose of the Malta Proceeding. Balzan Decl. [ECF No. 5-9, ROA 2165].

The Foreign Representative has significant questions regarding the transfer of substantially all of the assets of Geden and how Geden has continued to defend itself in litigation despite its court-ordered liquidation in Malta. *Id*. Eclipse has alleged certain claims and causes of action that raise questions regarding how the

assets of Geden have been sold and distributed, likely to the detriment of creditors and contrary to the primary purpose of the Malta Proceeding. *Id.*

### C. Advantage Award

Advantage Award may be in receipt of Geden's fraudulently transferred assets, and, additionally, may have been controlling Geden in litigation in the United States for almost a decade. *Id.* However, Advantage Award has never alleged it is a creditor of Geden, nor has it articulated a meaningful reason why it may be a "party in interest." Indeed, Advantage Award has provided no evidence that it has a legally recognized or pecuniary interest in whether Geden's Malta Proceeding is recognized.

## VI.    PROCEDURAL BACKGROUND

### A. The Chapter 15 Petition and Provisional Relief Motion

On April 28, 2025, the Foreign Representative submitted the *Petition for Foreign Recognition* [ECF No. 5-3; ROA 0010-0042] along with the *Verified Petition* [ECF No. 5-3; ROA 0042-0087] (collectively, the "Petition") initiating the chapter 15 case (the "Chapter 15 Case") for recognition of the Malta Proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") as a "foreign main proceeding," or, in the alternative, as a "foreign non-main proceeding" and for additional relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

On April 29, 2025, Geden filed its *Emergency Motion for Entry of an Order (I) Granting Emergency Provisional Relief for Issuance of the Automatic Stay, and (II) for Related Relief* (the "<u>Provisional Relief Motion</u>") [ECF No. 5-3; ROA 0088-0138].

On April 29, 2025, Geden filed the Balzan Declaration. Balzan Decl. [ECF No. 5-9; ROA 2157-2177].

On May 1, 2025, the Bankruptcy Court heard the Provisional Relief Motion and entered the *Order Granting Debtor's Emergency Motion for Entry of an Order (I) Granting Emergency Provisional Relief for Issuance of the Automatic Stay, and (II) Related Relief* (the "<u>Provisional Relief Order</u>"). [ECF No. 5-4; ROA 0396-0399]. Among other things, the Provisional Relief Order extended a preliminary injunction, which in form and function operated as an automatic stay. The Bankruptcy Court set the Foreign Recognition Hearing for June 4, 2025. Docket [ECF No. 5-2; ROA 0001-0010].

## B. The Foreign Recognition Hearing

On May 28, 2025, Advantage Award filed its *Objection to Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "<u>Objection to Foreign Recognition</u>") [ECF No. 5-4; ROA 0403-0429].

On June 2, 2025, attorneys Jeffrey M. Dine and Jordan A. Kroop, each filed *Motions to Appear Pro Hac Vice* which contained express language that Advantage Award (i) did not consent to a final order of the Bankruptcy Court; and (ii) did not submit to the jurisdiction of the Bankruptcy Court or the U.S. District Court for the Southern District of Texas, among other reservations. Mots. to Appear Pro Hac Vice [ECF No. 5-9, ROA 2178-2179]. Advantage Award asserted they could participate in the Foreign Recognition Hearing, argue the underlying substantive issues, and then not be subject to the jurisdiction of the Southern District of Texas.

On June 3, 2025, Geden filed its *Emergency Motion to Strike the Objection of Advantage Award Shipping, LLC to Verified Petition* (the "Motion to Strike"). [ECF No. 5-9; ROA 2185-2192]. Among other things, the Motion to Strike asserts that Advantage Award lacked standing to participate in the foreign recognition hearing because Advantage Award was neither a creditor, a party in interest, nor had any pecuniary or legally protected interest in the outcome of whether the Malta Proceeding was recognized as a foreign main proceeding. Mot. to Strike [ECF No. 5-9; ROA 2185-2194].

On June 4, 2025, the Bankruptcy Court held the first part of the Foreign Recognition Hearing. The Foreign Representative raised the pending Motion to Strike and the issue that Advantage Award was neither a creditor nor party directly

22

interested in whether the Malta Proceeding was recognized as a foreign proceeding. Foreign Recog. Hr'g 15:22-18:18 [ECF No. 5-10; ROA 2504-2505]. The Bankruptcy Court did not require Advantage Award to make a preliminary showing of why they had standing to object to the foreign recognition of the Malta Proceeding or addressed the standing issue at all. Instead, the Bankruptcy Court allowed Advantage Award nine days to respond to the Motion to Strike and proceeded with the hearing. Foreign Recog. Hr'g 19:3-4, 88:5-6 [ECF No. 5-10; ROA 2577]. Advantage Award was freely allowed to participate therein, cross-examine the Foreign Representative, and present evidence. Foreign Recog. Hr'g 30:2-86:25 [ECF No. 5-10; ROA 2519-2578].

On June 25, 2025, the Bankruptcy Court held the closing arguments of the Foreign Recognition Hearing and, without first ruling on the jurisdiction issues raised in the Motion to Strike, permitted Advantage Award to make oral argument. Foreign Recog. Hr'g 16:1-19:25 [ECF No. 5-10; ROA 2503-2508].

### C. Entry of the Memorandum Opinion and Order

On August 28, 2025, the Bankruptcy Court entered the Memorandum Opinion and the Order. [ECF No. 5-9; ROA 2441-2462]. On September 10, 2025, the Foreign Representative appealed the Order and the Memorandum Opinion. Notice of Appeal [ECF No. 5-9; ROA 2463-2465].

23

## <u>STANDARD OF REVIEW</u>

On Appeal, this Court reviews each of the Bankruptcy Court's conclusions of law, and mixed questions of law and fact *de novo*. *ASARCO, Inc. v. Elliott Mgmt. (In re Asarco, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011).

With respect to standing, "[s]tanding is a question of law that we review de novo." *Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021) (quoting *Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018); *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 354 (5th Cir. 2008) ("Standing is a jurisdictional requirement, and we are obliged to ensure it is satisfied regardless whether the parties address the matter."). Thus, the Bankruptcy Court's failure to address the standing issues raised by Debtor presents this Court with a purely legal question as Advantage Award offered no evidence to support that it had standing to object to foreign recognition.

With respect to analysis of Debtor's COMI, COMI determination issues are not merely factual findings that may warrant reconsideration—they are legal conclusions requiring de novo review. *See, e.g. In re Ran*, 607 F.3d at 1020 (explaining that "a determination of whether Ran's bankruptcy proceeding is a foreign main or nonmain proceeding is inherently a fact-driven inquiry, the facts in this case are not in dispute and the appeal to the district court was de novo, as is the appeal to this court." (citing *Belsome v. Belsom (In re Belsome)*, 434 F.3d 774,

24

776 (5th Cir. 2005)).  Accordingly, while findings of facts are reviewed for "clear error" the legal conclusions drawn from those facts, such as whether a corporation's COMI aligns with the statutory definition, are reviewed de novo. *See In re Ran*, 607 F.3d at 1020.

25

## **ARGUMENT**

The Bankruptcy Court made multiple reversible errors in denying foreign recognition of the Malta Proceeding.  This Appeal presents two general categories of errors. The first category consists of issues regarding Advantage Award's standing to participate in the Bankruptcy Case, and the second category consists of issues related to the determination of Geden's COMI.

The Bankruptcy Court first erred by not first resolving the Motion to Strike and establishing Advantage Award's standing to participate in the Bankruptcy Case and Foreign Recognition Hearing before deciding the merits of the case.  The Bankruptcy Court then erred in relying on evidence and testimony adduced by non-party Advantage Award in its Memorandum Opinion.

With regard to the Bankruptcy Court's substantive analysis, it erred in failing to apply the 1516 COMI Presumption by first deciding the proceeding was not an "easy case" citing to "complicated operational history" in which no evidence was offered to support.  Mem. Op. [ECF No. 5-9; ROA 2449, 2451].  The Bankruptcy Court then erred by requiring application of the liquidation activities test as the sole means of determining Geden's COMI.  Proper application of the liquidation activities test requires a finding of two potential jurisdictions between which a debtor's COMI may exist—a finding the Bankruptcy Court never made.

26

I.  **THE BANKRUPTCY COURT ERRED BY (I) FAILING TO DETERMINE STANDING BEFORE REACHING THE MERITS, AND (II) RELYING ON EVIDENCE FROM A PARTY LACKING STANDING**

  A. **The Bankruptcy Court Erred in Failing to Determine Standing Before Reaching the Merits**

   1.  *Courts May Only Hear and Consider the Objections of Parties with Standing*

A federal court has no constitutional authority to resolve the issues presented unless standing is conclusively established.  *See Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 418, 172 L. Ed. 2d 288 (2008); *In re Black Elk Energy Offshore Operations*, 2020 Bankr. LEXIS 2248, at *13 ("Federal courts do not possess authority to decide claims asserted by a party without standing.").

Thus, whether an objecting party has standing to participate is a threshold question that must be resolved prior to the merits.  *See In re Heritage Real Estate Inv.*, Nos. 14-03603-NPO, 16-01156-NPO, 2020 Bankr. LEXIS 3656, at *16 (Bankr. S.D. Miss. Sep. 9, 2020) (addressing standing to object as a threshold matter); *Osherow v. Wells Fargo Home Mortg., Inc. (In re Rhinesmith)*, 450 B.R. 630, 631 (Bankr. W.D. Tex. 2011) (requiring standing to be resolved at the outset because without standing, the party cannot be heard by the court).  In a bankruptcy case, only a party in interest has standing to object or participate.  *In re Technicool*

27

*Sys.*, 896 F.3d at 386 (requiring a direct and pecuniary interest in the outcome to find standing).

Where a party does not have a direct or pecuniary interest in the outcome, it lacks standing and the court must dismiss or disregard that party's participation.  *In re Rhinesmith*, 450 B.R. at 631; *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009). Indeed, Courts routinely refuse to hear arguments or consider evidence submitted by parties who lack a cognizable interest.  *See In re Moye*, Nos. 07-37770, 07-37364, 2012 Bankr. LEXIS 3619, at *11 (Bankr. S.D. Tex. Aug. 7, 2012); *In re Heritage Real Estate Inv.*, 2020 Bankr. LEXIS 3656, at *21; *In re Cape Quarry, LLC*, No. 19-12367 SEC, 2020 Bankr. LEXIS 3232, at *21 (Bankr. E.D. La. Nov. 16, 2020).

"It is the bankruptcy courts' duty to ensure that debtors are not subjected to legal challenges by those without standing to do so." *Thomas v. Fannie Mae (In re Thomas)*, 469 B.R. 915, 920 (B.A.P. 10th Cir. 2012).  If the objecting party has no direct pecuniary or legally protected interest in the Chapter 15 Case, the Court **cannot** consider its objection or any evidence it submitted.  Lack of standing ends the inquiry; the objection must be disregarded as a matter of law.

2.    *The Bankruptcy Court Upended the Legally Required Sequence by Failing to Decide the Motion to Strike Prior to the Petition for Recognition*

One month after the Foreign Representative filed the Chapter 15 Case, Advantage Award filed its objection to foreign recognition arguing that the Malta Proceeding should not be recognized.  Because Advantage Award is not a party to the proceeding (discussed below), Geden moved the Bankruptcy Court to strike its objection before the Foreign Recognition Hearing.  At the Foreign Recognition Hearing, the Bankruptcy Court refused to hear any argument regarding the Motion to Strike or even ask Advantage Award to make a preliminary representation that it had standing to participate.  Instead, the Bankruptcy Court allowed Advantage Award to challenge foreign recognition, examine the Foreign Representative for almost two hours, and afforded them approximately a week to respond to the Motion to Strike.

The Bankruptcy Court was faced with a fully briefed standing challenge by the time parties returned to make closing arguments regarding foreign recognition. Instead of first resolving the threshold question of whether Advantage Award had standing, the Bankruptcy Court stated that it did not need to hear arguments regarding the Motion to Strike and suggested that the parties focus on foreign recognition.  Foreign Recog. Hr'g 4:14-17 [ECF No. 5-10; ROA 2583].

The Bankruptcy Court later declined to recognize the Malta Proceeding, and in doing so, gave great weight to the arguments and testimony adduced by a non-party, Advantage Award. It then, inexplicably, declared the Motion to Strike moot.

This sequence is reversible error. When standing is challenged, a court must first determine the objecting party's ability to participate before it hears their argument, evidence, and requests. Only if standing is established may a court consider the substance presented by the potential party. *See In re Heritage Real Estate*, 2020 Bankr. LEXIS 3656 at *16; *In re Rhinesmith*, 450 B.R. at 631. A court cannot bypass this constitutional inquiry to resolve the merits inquiry it finds more straightforward or interesting, because standing, "determines the court's fundamental power even to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). To rule on the core issue and retroactively dispose of the standing issue as unnecessary is procedurally and logically backwards.

The Bankruptcy Court had notice that Advantage Award's standing as a party in interest to participate was in doubt, and it permitted Advantage Award to shape the adjudication anyway. That result cannot stand. If a party lacks standing, the court lacks jurisdiction to address or resolve its argument. *See e.g., In re Rhinesmith*, 450 B.R. at 631; *In re Hunt*, 149 B.R. 96, 99 (Bankr. N.D. Tex. 1992) (citations omitted) (explaining that a lack of standing robs the court of

30

jurisdiction to hear the grievance). By reaching the merits first, the Bankruptcy Court extended jurisdiction it did not yet have over Advantage Award—which is precisely the outcome the standing requirement exists to prohibit.

### B. If the Bankruptcy Court had Addressed Standing, It Would Have Found It Lacking

#### 1. Bankruptcy Court Requires "Party in Interest" Standing

To participate in a bankruptcy proceeding, a party must be a "party in interest." *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). Specifically, Federal Rule of Bankruptcy Procedure 1012(a) provides that "a party in interest may contest a petition for recognition of a foreign proceeding."

The Fifth Circuit generally understands a party in interest to "include all persons whose pecuniary interests are [sic] directly affected by the bankruptcy proceedings." *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006) (quoting *In re E.S. Bankest,* 321 B.R. 590, 594 (Bankr. S.D. Fla. 2005). To invoke the court's jurisdiction, the party requesting standing must either be a creditor of a debtor or be able to assert an equitable claim against the estate. *In re Ionosphere Clubs*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2nd Cir. 1983)). In other words, the interest must be legally protected, not merely practical, strategic, or contingent. *See In re Heritage Real Estate Inv.*, 2020 Bankr. LEXIS 3656, at *22 (explaining that tangential interests do not confer standing).

31

### 2. *Advantage Award Does Not Have Standing*

While standing to be heard in a bankruptcy case has been construed to be broader than typical standing requirements, the Bankruptcy Code does not create free-floating participation rights. Only those whose economic or legal interests are directly affected may appear and be heard. *See Cadle Co.*, 562 F.3d at 371; *In re Moye*, 2012 Bankr. LEXIS 3619, at *11. A party without such an interest is not a "party in interest," lacks standing, and may not object or introduce evidence. *See In re Thomas*, 469 B.R. at 920.

Advantage Award does not claim any pecuniary interest or assert any property right or legally recognized interest in the whether the Malta Proceeding is recognized as a foreign proceeding.  Instead, Advantage Award claims it has standing because (1) if the Petition is granted, it will extend the automatic stay in separate litigation, across the country, to which Advantage Award is a co-defendant of Geden; and (2) it may be served with discovery.  Neither theory satisfies the "party in interest" standing requirements.  *See In re Black Elk Energy Offshore Operations*, 2020 Bankr. LEXIS 2248, at *13-14.

First, the possible extension of the automatic stay in a different lawsuit is a collateral, indirect, and speculative consequence—not a direct injury arising from relief sought in this proceeding.  A possible effect in separate litigation is precisely

32

the kind of tangential interest *Heritage* holds insufficient to create party-in-interest status. *In re Heritage*, 2020 Bankr. LEXIS 3656, at *31.

Second, the prospect of being served with discovery is not a legally protected interest. It is not a property interest, not a claim, not a legal interest, not a pecuniary interest, and not an equitable interest. Discovery burdens, though inconvenient, do not create standing; they arise only if further litigation proceeds and only after a series of contingent events. That is a textbook indirect and non-redressable interest. *See In re Black Elk Energy Offshore Operations*, 2020 Bankr. LEXIS 2248, at *13-14.

At best, Advantage Award could theoretically become a litigation target by the Foreign Representative in the future. But again, a speculative prospect of harm is an incidental connection that fails to establish a direct, adverse, or pecuniary interest. *See id.* (finding a party that may be a future target of litigation lacked standing).

Because Advantage Award has no direct stake, no pecuniary interest, and no legally protected right affected by the recognition of the Malta Proceeding, it is not a party in interest. Thus, it should not have been permitted to lodge objections, question the Foreign Representative, present evidence, or make arguments regarding the Chapter 15 Case. Advantage Award's objection should have been

stricken but the Bankruptcy Court failed to even determine standing before hearing and favoring substantive arguments raised by Advantage Award.

### C. The Bankruptcy Court Erred by Allowing and Relying on Evidence from a Party Without Standing

    *1.    The Bankruptcy Court Cannot Reach the Merits of An Objection if the Objecting Party Lacks Standing*

When the party opposing requested relief lacks standing, the Bankruptcy Court lacks jurisdiction to hear the objection at all. *See e.g. Candelaria v. Health Care Serv. Corp.*, No. 17-404 KG/SMV, 2020 U.S. Dist. LEXIS 119651, at *12 (D.N.M. July 8, 2020); *A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929 (WWE), 2013 U.S. Dist. LEXIS 173865, at *13 (D. Conn. Dec. 12, 2013) (explaining that without standing, the court need not address the non-party's arguments).

The law is clear that allowing a party without standing to participate in the adjudication of an issue is both procedurally improper and fundamentally prejudicial: Permitting a non-party to "lodge objections to the [bankruptcy proceeding]" would both "entirely skew the task of Bankruptcy Court," and be "extremely unfair to debtors." *Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.)*, 505 F.3d 109, 119 (2d Cir. 2007) (quoting *Masonic Hall & Asylum Fund v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, No. 05-60006, 2006 U.S. Dist. LEXIS 85691, at *8 (S.D.N.Y. Nov. 16, 2006) (affirming the

34

district court's holding that the bankruptcy court did not abuse its discretion by approving a settlement without ruling on the non-parties' objections, allowing them to intervene, or affording them the opportunity for discovery). Such an error is meaningfully prejudicial—not harmless.

Consistent with this rule, when an objector lacks standing, the objection should be treated as if it was never made. *See In re A.P.I., Inc.*, 331 B.R. 828, 853 (Bankr. D. Minn. 2005), *aff'd sub nom OneBeacon America Ins. Co. v. A.P.I., Inc.*, No. 06-167, 2006 U.S. Dist. LEXIS 34297 (D. Minn. 2006) (overruling objection of a party without standing and finding the debtor was thus entitled to the ruling sought); *In re Underwood*, 583 B.R. 438, 443 (Bankr. E.D. Mich. 2018) (overruling the objection of a party without standing to object). And without standing, no hearing on the objection is required at all. *See Phillips v. Tow (In re Phillips)*, No. H-15-2706, 2016 U.S. Dist. LEXIS 77734, at *17 n.5 (S.D. Tex. June 15, 2016); *In re Tour Train P'ship*, 15 B.R. 401, 402 (Bankr. D. Vt. 1981) (dismissing a non-party's request to lift the automatic stay by explaining that a stranger to the proceeding may not make requests of the bankruptcy court).

>    2.    *The Bankruptcy Court Erred in Considering and Giving Weight to Arguments and Evidence Presented by Advantage Award*

Advantage Award had no direct, legally protected interest in the relief sought by the Foreign Representative. Yet, the Bankruptcy Court allowed Advantage Award to: (1) submit full briefing; (2) introduce and rely on exhibits;

(3) examine the Foreign Representative; and (4) make extended oral argument. The Bankruptcy Court then relied on that evidence and argument in its ruling. This distortion of the Court's function and prejudice to the party seeking relief is the exact outcome cautioned by the *Krys v. Official Comm. of Unsecured Creditor* court. 505 F.3d at 119. Even with the Bankruptcy Court's finding that it "must make an independent determination as to whether the Maltese Proceeding meets the definitional requirements of the Bankruptcy Code", relying on Advantage Award's full argument, evidence, and presentation is highly prejudicial. Mem. Op. [ECF No. 5-9; ROA 2448].

By allowing Advantage Award to shape the disposition, the Bankruptcy Court altered the substantive balance of the proceeding. In effect, by relying on Advantage Award's presentation of evidence and arguments, the Bankruptcy Court impliedly found that Advantage Award had standing. The Foreign Representative was forced to litigate against a party who had no right to be heard, respond to evidence that should have never been entered on the record, and defend against legal theories unfairly presented. This is structural prejudice, not merely procedural inconvenience. It is the kind of inherently unfair error that changes the trajectory of the entire adjudication.

It is axiomatic that a ruling based on evidence and argument submitted by a party without standing is not a ruling resolving a live case or controversy. It is an

advisory opinion. *See e.g. United States DOD v. AFGE*, No. 6:25-cv-00119-ADA, 2025 U.S. Dist. LEXIS 142239, at \*27 (W.D. Tex. July 23, 2025) (demonstrating the default effect a lack of standing confers on the opinion of the court). Because a "stranger to the proceeding" cannot invoke the power of the bankruptcy court, by extension, a judgment resting on the contributions of such a stranger cannot be valid. *See In re Tour Train P'ship*, 15 B.R. at 402.

Though the Bankruptcy Court was prohibited from resolving the merits of a non-party's arguments, it did so anyway, and it ruled under influence of Advantage Award's participation. The order therefore must be vacated, and the matter must be reconsidered without reference to Advantage Award's briefing, arguments, or evidence.

## II. THE BANKRUPTCY COURT ERRED BY (I) NOT APPLYING THE 1516 COMI PRESUMPTION, (II) MISAPPLYING THE "LIQUIDATION ACTIVITIES" TEST TO DETERMINE GEDEN'S COMI, AND (III) NOT FINDING THAT THE MALTA PROCEEDING WAS EITHER A FOREIGN MAIN OR FOREIGN NONMAIN PROCEEDING

### A. Recognizing a Foreign Proceeding and Statutory Predicate

Section 1517(a) of the Bankruptcy Code states that the bankruptcy court **must** enter an order recognizing a foreign proceeding if "(1) such foreign proceeding for which foreign recognition is sought is a foreign main or foreign non-main proceeding within the meaning of section 1502; (2) the foreign

37

representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

Here, the Foreign Representative is a person or body as required by section 1517(a)(2) of the Bankruptcy Code. Foreign Recog. Hr'g 6: 8-16 [ECF No. 5-10; ROA 2585]. Additionally, the Foreign Representative met the requirements of sections 1517(a)(3) and 1515 by introducing into evidence a certified copy of the decision commencing the Malta Proceeding. *See* 11 U.S.C. §§ 1517(a)(3), 1515(b)(1); Dissol. Order [ECF No. 5-9, ROA 2047-2066], Balzan Decl. [ECF No. 5-9; ROA 2157-2177].

Turning to section 1517(a)(1), the Bankruptcy Code directs that a Bankruptcy Court determine whether the proceeding pending in a foreign country is in fact a "foreign proceeding" as that term is defined by section 101(23) of the Bankruptcy Code.[7] Second, the Bankruptcy Court must then determine whether the foreign proceeding is a foreign main or foreign nonmain proceeding.

Here, the Bankruptcy Court found that "[i]t is undisputed [that] the Maltese Proceeding is a foreign proceeding under § 101(23)." Mem. Op. [ECF No. 5-9; ROA 2449]. With all other statutory factors met, the Bankruptcy Court was left to

---

[7] "The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

38

determine whether the Malta Proceeding was either a foreign main or foreign nonmain proceeding.

A foreign main proceeding is defined as a "foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  The Bankruptcy Court improperly determined that the Malta Proceeding was not a foreign main proceeding because there was insufficient evidence to establish Malta as the Geden's COMI.  The Bankruptcy Court erred in its determination by failing to properly apply section 1516(c).

### B. COMI

The Bankruptcy Code does not define COMI, but the concept is generally equated with principal place of business in American jurisprudence. *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (citing *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal 2006)).  COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties.  *In re Ran*, 607 F.3d at 1025-26.  Additionally, COMI is "determined at the time the Chapter 15 petition is filed," however, "to offset a debtor's ability to manipulate its COMI, a court may also look at the time period between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition."  *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 133-34 (2nd Cir. 2013).

39

In determining a foreign debtor's COMI, the United States Fifth Circuit Court of Appeals utilizes a "totality of circumstances" test and recognizes the following list of non-exhaustive factors to be considered when a debtor's COMI is in dispute: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor; (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and/or (v) the jurisdiction whose law would apply to most disputes. *In re Think3 Inc.*, Case, No. 11-11925, 2011 Bankr. LEXIS 5349, at *17 (Bankr. W.D. Tex. Sep. 12, 2011); *In re Ran*, 607 F.3d at 1023 (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007)).

### C. The 1516 COMI Presumption

To aid courts in analyzing where a corporation may have its COMI, Chapter 15 of the Bankruptcy Code provides that "**[i]n the absence of evidence to the contrary**, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c) (emphasis added). While the 1516 COMI Presumption "establishes a presumption that a debtor's COMI is its place of incorporation, the presumption can be overcome where other factors support finding the COMI to be elsewhere." *In re Modern Land (China) Co.*, 641 B.R. 768, 772 (Bankr. S.D.N.Y. 2022); *In re*

*Culligan Ltd.*, No. 20-12192, 2021 Bankr. LEXIS 1783, at *29 (Bankr. S.D.N.Y. July 2, 2021) ("the presumption is rebuttable if other factors suggest that COMI lies elsewhere") (citing *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237, 272 (Bankr. S.D.N.Y. 2019)) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. 325, 335 (S.D.N.Y. 2008)) ("[I]f the foreign proceeding is in the country of the registered office, and if there is evidence that the center of main interests might be elsewhere, then the foreign representative must prove that the center of main interests is in the same country as the registered office.").

In practice, the factors identified in *SPhinX* are often used to assess whether the 1516 COMI Presumption has been effectively rebutted or to establish a corporation's COMI independently of the 1516 COMI Presumption. *See In re Iovate Health Scis. Int'l Inc.,* Case No. 25-11958, 2025 Bankr. LEXIS 2284, at *27 (Bankr. S.D.N.Y. Sep. 12, 2025) ("In assessing whether a movant challenging the registered office presumption has overcome that presumption, courts . . . have applied [the *SPhinX*] factors"); *In re Giftcraft Ltd.*, Case No. 25-11030, 2025 Bankr. LEXIS 1350, at * 20-21 (Bankr. S.D.N.Y. June 4, 2025); *In re Intercement Brasil S.A.*, 668 B.R. 802, 819 (Bankr. S.D.N.Y. 2025).

While a claimant always retains the burden of persuasion, rebuttable presumptions operate by shifting the initial burden of production to the opponent.

41

*See In re Williams*, No. 24-33706, 2025 Bankr. LEXIS 2369, at *8 (Bankr. S.D. Tex. Sep. 22, 2025).  Once a presumption arises, the opposing party "must provide specific rebuttal evidence and not rely on generalities.  Such is the case throughout legal proceedings generally, and such is the case in bankruptcy.  *Chatz v. Alice Rhoads Living Tr. Dated June 1, 2012 (In re Rhoads)*, 572 B.R. 905, 916 (Bankr. N.D. Ill. 2017) (collecting bankruptcy cases requiring both specificity and a high degree of relevance in order to effectively rebut a presumption).  When no authority specifies how the presumption may be rebutted, the *amount* of evidence required may vary.  *See e.g. In re Jones*, No. 22-50121, 2023 Bankr. LEXIS 2292, at *7 (Bankr. M.D.N.C. June 15, 2023) (emphasis added); BANKRUPTCY EVIDENCE MANUAL § 301:4 (2022 ed.).  What is constant, however, is that actual evidence— not argument, speculation, or bare allegations—is required to overcome the presumption.  *See In re Transamerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992).

In the present case, stated simply and unequivocally, absolutely no evidence was offered to show that the COMI of Geden was in any other jurisdiction other than Malta.

### D. The Bankruptcy Court Erred in Not Applying the 1516 COMI Presumption by Not Analyzing Contrary Evidence

In its Memorandum Opinion, instead of first applying the 1516 COMI Presumption and then evaluating any contrary evidence presented, as required by

42

the 1516 COMI Presumption, the Bankruptcy Court relegated application of the 1516 COMI Presumption exclusively to "easy cases" and found it "inappropriate in cases where there is substantial dispute."  Mem. Op. [ECF No. 5-9; ROA 2449-2450] (quoting *In re Creative Fin.*, 543 B.R. at 517) (citing *In re SPhinX, Ltd*., 351 B.R. at 112).

          1.     *The Bankruptcy Court Applied an "Easy Case" Analysis Rather than Analyzing Contrary Evidence*

Section 1516(c) does not contain an exception to its application.  It does not state that it only applies in "easy cases."  Per the statutory language, the 1516 COMI Presumption applies in all Chapter 15 cases.  The question is whether there is "contrary evidence" that the COMI could be located elsewhere to rebut the presumption.

If Congress intended to render the 1516 COMI Presumption discretionary, it would have done so.  For example, section 1516(a) provides that "if the decision or certificate referred to in section 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is **entitled** to so presume."  11 U.S.C. § 1516(a) (emphasis added).  The use of the word "entitled" indicates that Congress intended to give bankruptcy courts the discretion to apply the presumption contained in section 1516(a). *See In re Ocean Rig UDW Inc*., 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017) ("A bankruptcy court **may** presume that the person petitioning for chapter 15 recognition is a foreign

43

representative if the decision or certificate from the foreign court so indicates")

(emphasis added).

By the clear and unambiguous language of section 1516(c), application of

the 1516 COMI presumption is mandatory and the Bankruptcy Court committed

reversible error in limiting application to "easy cases." Further, the Bankruptcy

Court erred in construing the conclusory arguments of a party lacking standing as

"evidence" that the 1516 COMI Presumption should not apply.  Yet, all such

"evidence" merely established that Advantage Award disputed Geden's right to

recognition.

For example, the Bankruptcy Court cites to the flippant assertion that a

"small mountain of papers" were filed in the Chapter 15 Case as evidence that this

is "not an easy case."  Mem. Op. [ECF No. 5-9; ROA 2450].  Never mind that the

"mountain of papers" were filed by Advantage Award, a party who lacked

standing, and by the Foreign Representative in responding to them.  The voracity

of Advantage Award's illegitimate objection is not evidence of anything but its

own desire to see the Malta Proceeding not be recognized, let alone "contrary

evidence" to be considered in the application of the 1516 COMI Presumption.

Further, the Bankruptcy Court noted there were two addresses listed on the

Performance Guarantee—one in Malta, and a notice address in Turkey. The

Performance Guarantee, however, was expressly not offered, or judicially

recognized, for the truth of the matters asserted in that document. Mem. Op. [ECF No. 9; ROA 2450]; Foreign Recog. Hr'g 18:7-1 [ECF No. 5-10; ROA 2507].

Treating these addresses as "evidence to the contrary" sufficient to rebut the 1516 COMI Presumption constitutes a misapplication of basic rules of evidence. Courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Roe v. E. Baton Rouge Par. Sch. Bd.*, No. 23-1324-SDD-SDJ, 2024 U.S. Dist. LEXIS 183549, at *13 (M.D. La. Oct. 3, 2024) (quoting *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018)); *see also Reneker v. Offill*, No. 3:08-CV-1394-D, 2012 U.S. Dist. LEXIS 83017, at *13 (N.D. Tex. June 14, 2012) (courts "generally cannot take judicial notice of the findings of fact from other proceedings for the truth of the matter asserted because those facts are usually disputed and almost always are disputable."). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018). This is especially and definitively true when the party offering the document, and the presiding judge, expressly agree that the document is offered for a purpose other than the truth of the matter asserted—as is the case here.

45

Moreover, as the Bankruptcy Court looked to the Peformance Guarantee, executed in 2010, it also expressly stated that "COMI is determined at the time the Chapter 15 petition is filed." Mem. Op. [ECF No. 5-9; ROA 2455]. The Bankruptcy Court impermissibly looked to Geden's operational activity (as COMI determinations are made at the time of the filing of the chapter 15 petition absent evidence of COMI manipulation) in determining whether to apply the 1516 COMI Presumption, but then did not look back into the history of Geden's Malta Proceeding and operations in determining Geden's COMI without the 1516 COMI Presumption.

Lastly, the Memorandum Opinion cites to the Bankruptcy Court's own case, *In re Telefoncia del Peru S.A.A.*, No. 25-90022 (ARP) (Bankr. S.D. Tex. Feb. 25, 2025), as an example of an "easy case." In *Telefoncia*, recognition turned on whether the foreign proceeding pending in Peru met the "foreign proceeding" definition of the Bankruptcy Code. The case is factually distinguishable and entirely inapplicable here. In *Telefonica*, the debtor's COMI was never formally in dispute. Thus, in relying on its *Telefonica* case, the Bankruptcy Court seems to be saying that only cases where COMI is undisputed are "easy cases." Were this the case, the 1516 COMI Presumption could be rebutted simply by filing an objection and without providing actual relevant evidence to rebut the presumption.

An objective analysis of the plain, unambiguous statute, however, demands a contrary conclusion. Because the 1516 COMI Presumption is only rebutted by sufficient evidence that Geden's COMI could have been somewhere other than Malta, the Bankruptcy Court's "easy case" analysis is both irrelevant and contrary to the statutory language of the 1516 COMI Presumption. Accordingly, the Bankruptcy Court erred by not applying the 1516 COMI Presumption.

### E. The Bankruptcy Court Erred by Misapplying the "Liquidation Activities" Test

Even if the Bankruptcy Court correctly applied the 1516 COMI Presumption and found it rebutted by contrary evidence (it did not), then the Bankruptcy Court made yet another reversible error by misapplying the "liquidation activities" test to determine Geden's COMI.

### 1.    *Geden Established Malta as its COMI*

When contrary evidence sufficiently rebuts the 1516 COMI Presumption, the Court must determine a debtor's COMI by weighing properly admitted evidence. Both the Fifth and Second Circuits utilize the widely accepted non-exclusive factors identified in *SPhinX* as a guide to determine a corporation's COMI:

> (i)    the location of the debtor's headquarters;
>
> (ii)   the location of those who actually manage the debtor (which, conceivably, could be the headquarters of a holding company);

47

> (iii)   the location of the debtor's primary assets;
>
> (iv)   the location of the majority of the debtor's creditors or a majority of the creditors who would be affected the case; and/or
>
> (v)    the jurisdiction whose law would apply to most disputes.

*See In re Think3 Inc.*, 2011 Bankr. LEXIS 5349 at *17; *In re Ran*, 607 F.3d at 1023 (citing *In re SPhinX, Ltd.*, 351 B.R. at 117).

Indeed, the evidence admitted by the Foreign Representative, and uncontroverted by Advantage Award, plainly established that Malta met the *Ran/SPhinX* factors.   Foreign Recog. Hr'g 17:1-18:25 [ECF No. 5-10; ROA 2506-2057].  Most salient here:

> ➢   "Geden is controlled in Malta and all of Geden's decision-making is made in Malta."  Balzan Decl. [ECF No. 9; ROA 2171].
>
> ➢   The Foreign Representative, who is the sole person in control of Geden, resides and works in Malta. Mem. Op. [ECF No. 9; ROA 2163].
>
> ➢   The Foreign Representative sought authority from the Maltese Court to bring the Chapter 15 Case. Balzan Appt. Order [ECF No. 5-9, ROA 2076-2077].
>
> ➢   Malta law will apply to most disputes. Balzan Decl. [ECF No. 9; ROA 2163].
>
> ➢   Pursuant to Malta law, Geden's only "operations" were to wind down in accordance with Malta law.  Balzan Decl. [ECF No. 9;

48

ROA 2159-2160]; Malta Dissol. Order [ECF No. 5-9, ROA 2047-2066].

This evidence alone was more than enough to satisfy the *Ran/SPhinX* factors[8] and establish Geden's COMI in Malta—with or without the 1516 COMI Presumption.

### 2.    *Letterbox Jurisdictions*

In the face of such dispositive evidence, Advantage Award offered nothing more than counsel's cursory and unsupported claim that Malta was simply a "letterbox jurisdiction," thereby suggesting Geden's COMI was located elsewhere. *See* Foreign Recog. Hr'g 16:9-12 [ECF No. 5-10; ROA 2595].  But Advantage Award offered no evidence that Geden's COMI was in any jurisdiction other than Malta.[9]

Despite the total lack of legal or evidentiary support that Malta was indeed a letterbox jurisdiction, the Bankruptcy Court latched onto Advantage Award's unsupported allegation.  This is perplexing given the peculiar nature of the Malta

---

[8]  Additionally, the Memorandum Opinion noted that (i) Geden owned fifty subsidiaries that owned vessels, and each subsidiary was a Maltese company that filed annual consolidated financial statements in Malta, (ii) the Vessels were financed by various banks secured by Maltese ship mortgages, registered in Malta, and flew the Maltese flag, and (iii) Geden paid tonnage taxes in Malta on Maltese-registered vessels.  Mem. Op. [ECF No. 9; ROA 2227-2279].  The Financial Statement shows substantial operations in Malta.

[9]  At the Foreign Recognition Hearing, Advantage Award argued that Geden's COMI could have been Turkey but provided no evidence of their own to support that finding.  Considering that Advantage Award and Advantage Tankers are controlled by substantially the same people that were in control of Geden, this raises serious concern.

Proceeding, the lack of cooperation of the former representatives of Geden, and the evidence offered by the Foreign Representative that any and all control of Geden was under the purview of the Foreign Representative and the Maltese Court. The Memorandum Opinion does not reconcile this conflict.

The unjustifiable reliance on Advantage Award's baseless assertion led the Bankruptcy Court to commit further error by hinging the entire recognition proceeding on the application and outcome of the "liquidation activities" test to determine whether Geden's COMI was indeed in Malta.

3.    *The Liquidation Activities Test*

When faced with evidence of more than one COMI jurisdiction, some courts in other circuits have applied the "liquidation activities" test laid out in *Creative Finance* and *Fairfield Sentry* to decide between two plausible jurisdictions. In *Creative Finance*, for example, the court analyzed the liquidation activities of a corporation after first finding, based upon the jurisdiction's applicable statutory framework, that the country of the debtor's registration was merely a "letterbox jurisdiction" and that other jurisdictions identified by the parties were more plausible COMIs. *See Creative Finance.*, 543 B.R. at 511. In *Creative Finance,* there was direct and affirmative evidence admitted in the record that: (i) the debtor's COMI could have been in the British Virgin Islands, the United Kingdom, Spain, or Dubai, and (ii) the debtor's asserted COMI, the British Virgin Islands,

50

was merely a "letterbox jurisdiction" under B.V.I. law. *Id*. Faced with this evidence, the court undertook further analysis to determine whether the liquidator in the British Virgin Islands had conducted sufficient "liquidation activities" to "switch" the COMI from the other potential jurisdictions (the United Kingdom or Spain) to the British Virgin Islands. *Id*. at 514. The court ultimately found that, notwithstanding the principals' manipulation in selecting and then underfunding the liquidator, COMI could still have shifted to the British Virgin Islands if the liquidation-activities test was satisfied. *Id*.

In other words, the *Creative Finance* court, and courts following this precedent, use the liquidation activities test as a tiebreaker between two viable COMI locations or whether a COMI switched from one jurisdiction to a "letterbox" jurisdiction—both supported by the evidentiary record. *See generally Fairfield Sentry*, 714 F. 3d at 130; *Creative Finance*, 543 B.R. 498 at 514. Simply put, without competent evidence that Geden's COMI could be anywhere other than Malta, there was no tie for the liquidation activities test to break and no need to decide between two plausible jurisdictions. *See generally Creative Finance*, 543 B.R. at 519-20.

51

4.    *The Bankruptcy Court Erred in Applying the Liquidation Activities Test Without First Finding Malta Was a Letterbox Jurisdiction or that Another Jurisdiction Could Plausibly be Geden's COMI*

Having improperly declined to apply the 1516 COMI Presumption, Bankruptcy Court should have evaluated Geden's COMI according to Fifth Circuit precedent—by using the *Ran/SPhinX* factors. Instead, it looked to *Creative Finance* for guidance, misapplied it, and impermissibly employed the "liquidation activities" test.

Relying solely upon Advantage Award's argument that "before liquidation, Geden's business activities were based out of Turkey and Malta was a letterbox jurisdiction" the Court sought to "determine whether Dr. Balzan did enough work to shift Geden's principal place of business to Malta." Mem. Op. [ECF No. 9; ROA 2454]. Thus, disregarding the 1516 COMI Presumption *and* the *Ran/SphinX* factors, the Bankruptcy Court errantly determined that "[f]or the Chapter 15 Case to qualify as a foreign main proceeding, the relevant inquiry is whether Dr. Balzan engaged in significant pre-Petition work to operate or liquidate Geden in Malta[.]" Mem. Op. [ECF No. 5-9; ROA 2455]. This illogical application of the liquidation activities test represents a departure from, not adherence to, the *Creative Finance* standard, as it expands the liquidation activities from a factor worthy of consideration to an independent requirement in establishing COMI. *See generally Fairfield Sentry*, 714 F. 3d at 130; *Creative Finance*, 543 B.R. 498 at 514.

52

In the Foreign Representative's survey of the law, no court has applied the liquidation activities test without first finding that another jurisdiction could plausibly be a corporation's COMI.  Yet, even if a debtor's liquidation activities is to be properly considered an independent factor under *Ran/SPhinX*, case precedent clearly establishes that such factors are not exclusive and that no one factor controls.  The Foreign Representative met the majority of the *Ran/SphinX* factors, and, in light of the history of the Malta Proceeding, the lack of cooperation of Geden's former representatives (now Advantage Award's representatives), Malta is the **only** plausible COMI of Geden.

The evidence and arguments that the Foreign Representative failed to perform certain liquidation activities in Malta is a red herring.  There was insufficient evidence that Geden's COMI could anywhere other than Malta.  The Foreign Representative's liquidation activities in Malta are thus irrelevant—particularly in light of the difficult history of Geden's liquidation and the non-cooperation of Geden's former principals.  Regardless, the Foreign Representative met the *Ran/SPhinX* factors in his demonstration that Geden was and is controlled in Malta.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests that this Court enter an order (i) vacating the Bankruptcy Court's entry of the Order, (ii) finding that Advantage Award did not have standing to participate in the Foreign Recognition Hearing, (iii) finding that the Bankruptcy Court could not rely on evidence and testimony adduced by Advantage Award in rendering its Memorandum Opinion and Order, (iv) finding that the 1516 COMI Presumption applies, (v) finding that Geden's COMI is in Malta, (vi) finding that the Malta Proceeding is recognized as a foreign main proceeding, and (vii) granting Appellant such other and further relief to which he may be justly entitled.

Dated:  November 20, 2025.

**OKIN ADAMS BARTLETT CURRY LLP**

*/s/ Edward A. Clarkson, III*
Matthew S. Okin
Attorney in Charge
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
Email:  dcurry@okinadams.com
Edward A. Clarkson, III
Texas Bar No. 24059118
Email: eclarkson@okinadams.com
1113 Vine Street, Suite 240
Houston, Texas 77002
Telephone: 713-228-4100
Facsimile:  888-865-2118

**COUNSEL FOR APPELLANT**

54

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2025, a true and correct copy of the foregoing Appellant's Brief was caused to be served via the Court's CM/ECF system on all parties consenting to service through the same, and on Advantage Award Shipping LLC via first class United States Mail, postage prepaid, at the addresses listed below.

Advantage Tankers, LLC (Company Number 963198
c/o Trust Company Complex
Ajeltake Road, Ajeltake Island, Majuro, MH 96960

Advantage Award Shipping, LLC
c/o Trust Company Complex
Ajeltake Road, Ajeltake Island, Majuro, MH 96960

Advantage Award Shipping, LLC
314 North 12th Street, Suite 100
Philadelphia, PA 19107

Advantage Award Shipping, LLC
Cozen O Connor
c/o Neil Quartaro- Jared Bayer
1650 Market Street, Suite 2800
Philadelphia, PA 19103

Advantage Award Shipping, LLC
c/o Pachulski Stang Ziehl & Jones LLP
Michael D. Warner (TX Bar # 00792304)
Steven W. Golden (TX Bar # 24099681)
 700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
mwarner@pszjlaw.com
sgolden@pszjlaw.com

-and-

Jordan A. Kroop (admitted pro hac vice)
Jeffrey M. Dine (admitted pro hac vice)

55

1700 Broadway, 36th Floor New York, NY 10019
Telephone: (212) 561-7734
jkroop@pszjlaw.com
jdine@psjzlaw.com

*/s/ Edward A. Clarkson, III*
Edward A. Clarkson, III

56

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED. R. BANKR. P. 8015(a)(7)(B) because:

This brief contains 11,482 words, excluding the parts of the brief exempted by FED. R. BANKR. P. 8015(g).

2.    This brief complies with the typeface requirements of FED. R. BANKR. P. 8015(a)(5) and the type-style requirements of FED. R. BANKR. P. 8015(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman in font size 14 for the text and in font size 12 for the footnotes.

_/s/ Edward A. Clarkson, III_____
Edward A. Clarkson, III