United States District Court
Southern District of Texas
**ENTERED**
July 06, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| IN RE GEDEN HOLDINGS LTD. | § | |
| | § | |
| Debtor, | § | |
| | § | |
| DR REUBEN BALZAN, | § | CIVIL ACTION NO. H-25-4308 |
| | § | |
| Appellant, | § | BANKRUPTCY CASE NO. 25-90138 |
| v. | § | |
| | § | |
| ADVANTAGE AWARD SHIPPING, | § | |
| LLC, | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM AND OPINION**

This case concerns Chapter 15 of the Bankruptcy Code. In April 2025, Geden Holdings, Ltd. filed a petition in the Bankruptcy Court for the Southern District of Texas seeking recognition of a foreign liquidation proceeding pending in Malta. The Bankruptcy Court concluded that the Maltese proceeding was not recognized as a foreign main or nonmain proceeding under the Bankruptcy Code and denied the petition for recognition. The Bankruptcy Court also dismissed Geden's motion to strike Advantage Award's objection as moot. Geden now appeals. For the reasons explained below, the court affirms the Bankruptcy Court's order denying the petition for recognition and dismissing the motion to strike as moot. This appeal is dismissed.

**I.     Background**

Geden Holdings, Ltd. was registered in Malta in 2002. (Bankr. Docket Entry No. 26-1 at 12). Its principal activity was owning subsidiary companies that operated ships in the international shipping market. (*Id.*). On June 15, 2017, the First Hall of the Civil Court in Malta found Geden unable to pay its debts and ordered the company to be dissolved and wound up. (*Id.* at 20). Geden

was deemed insolvent under Maltese law on September 16, 2016, the date the windup application was filed.  (Bankr. Docket Entry No. 26-8 ¶ 13).  In June 2017, Paul Darmanin was appointed as Liquidator.  (*Id.* ¶ 16; *see also* Bankr. Docket Entry No. 26-1 at 20).  He formally resigned in September 2018.  (Bankr. Docket Entry No. 26-3).  On December 4, 2023, the Maltese Court appointed Dr. Reuben Balzan as Liquidator and Foreign Representative of Geden.  (Bankr. Docket Entry No. 26-2).  The Maltese Court authorized Balzan to file for Chapter 15 relief.  (Bankr. Docket Entry No. 26-8 ¶ 2).

In April 2025, Geden filed a petition under Chapter 15 of the Bankruptcy Code seeking recognition of the foreign liquidation proceeding pending in Malta.  (Bankr. Docket Entry No. 1). Advantage Award Shipping, LLC, appeared and objected to Geden's petition and opposed the court granting recognition.  (Bankr. Docket Entry No. 23).  Geden filed an emergency motion to strike Advantage Award's objection.  (Bankr. Docket Entry No. 32).  Eclipse Liquidity, Inc. also filed a Memorandum in Support of the Petition.  (Bankr. Docket Entry No. 36).  Eclipse is a Geden creditor and is funding Balzan's attorney's fees.[1]  (*Id.* at 1; Bankr. Docket Entry No. 44 at 42:11-22).  Eclipse is also involved in separate litigation in Pennsylvania state court involving Geden.[2]

---

[1] Geden's counsel stated before the Bankruptcy Court that it "seems pretty clear that" although there was some kind of "long-running vendetta" between Advantage Award and Eclipse, that animosity was not the point of the Chapter 15 proceedings.  (Bankr. Docket Entry No. 44 at 13:1–7; *see also id.* at 17:4–14). Meanwhile, counsel for Advantage Award described the proceedings as "yet another attempt by Eclipse to litigate against Advantage, despite the fact that they have been unsuccessful, uniformly, without exception, in doing so throughout the United States for 10 years."  (Bankr. Docket Entry No. 55 at 29:18–21; *see also id.* at 33:16–21).  Eclipse's memo details more of the litigation history among the parties.  (*See* Bankr. Docket Entry No. 36 at 4).  As Geden's counsel stated, the apparently long-running dispute between Eclipse and Advantage (of which this proceeding seems to be somewhat of a proxy fight) is immaterial to the issues before the Bankruptcy Court and now before this court.

[2] The Bankruptcy Court summarized the Pennsylvania state court proceedings.  (Bankr. Docket Entry No. 57 at 15–16).  In short, after Balzan was appointed in the Maltese Proceeding, he learned that Geden had been actively defending itself in Pennsylvania state court for several years in litigation also involving Eclipse.  (*Id.* at 15).  Balzan explains in his declaration that because "Geden must be represented in legal proceedings by its liquidator under Section 110 of the Regulations, it is unclear who was directing Geden

The Bankruptcy Court held hearings on Geden's petition for recognition and the motion to strike. (Bankr. Docket Entry Nos. 40, 44, 51, 55). In August 2025, the Bankruptcy Court issued a Memorandum Opinion denying the petition for recognition and dismissing the motion to strike as moot and entered an accompanying order. (Bankr. Docket Entry Nos. 57, 58). Geden appealed and listed Advantage Award as a "Notice Party."[3] (Bankr. Docket Entry No. 61). On January 13, 2026, the Bankruptcy Court denied Geden's motion for a stay pending appeal. (Bankr. Docket Entry No. 87).

## II.    The Legal Standard

A federal court has jurisdiction to hear appeals from a bankruptcy court's final orders under 28 U.S.C. § 158(a). The court reviews the Bankruptcy Court's factual findings for clear error and conclusions of law de novo. *See In re CJ Holding Co.*, 597 B.R. 597, 604 (S.D. Tex. 2019). "While a determination of whether [a] bankruptcy is a foreign main or nonmain proceeding is inherently a fact-driven inquiry, the facts in this case are not in dispute and the appeal" is de novo. *In re Ran*, 607 F.3d 1017, 1020 (5th Cir. 2010).[4]

## III.    Analysis

---

and for what purpose." (Bankr. Docket Entry No. 26-8 ¶ 21). Balzan repeatedly tried to appeal in the Pennsylvania state court litigation and was found to lack standing. (Bankr. Docket Entry No. 57 at 15–16). One of Balzan's stated goals in seeking Chapter 15 recognition is to "determine who has been controlling Geden in the Pennsylvania State Court Litigation." (Bankr. Docket Entry No. 26-8 ¶ 6).

[3] The notice of appeal before the Bankruptcy Court technically listed Balzan as the appellant. (Bankr. Docket Entry No. 61). In the filings before this court, however, Geden lists itself as the appellant. (*See, e.g.*, Docket Entry No. 6 at 1). For simplicity, the court refers to the appellant as Geden. Geden listed Advantage Award as a "Notice Party" in its notice of appeal because it argued that Advantage Award lacked standing to participate in the appeal. (Bankr. Docket Entry No. 61 at 2 n.1). The court need not decide that issue because, like the Bankruptcy Court, it concludes it has an independent duty to review the facts and law to determine whether Geden has met its burden of proving its COMI.

[4] Advantage Award argues that the standard of review is clear error. (*See, e.g.*, Docket Entry No. 10 at 15). *In re Ran* establishes, however, that although the line appears fuzzy, the standard here is de novo because none of the facts are in dispute.

### A. The Chapter 15 Legal Standard

Chapter 15 of the Bankruptcy Code was created "to provide effective mechanisms for dealing with cases of cross-border insolvency." *In re Ran*, 607 F.3d at 1020 (quoting 11 U.S.C. § 1501(a)). Under § 1509, "[a] foreign representative may commence a case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1509(a).[5] Title 11 U.S.C. § 1517 sets out the conditions for recognition of a foreign proceeding. This provision states:

(a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—
  (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
  (2) the foreign representative applying for recognition is a person or body; and
  (3) the petition meets the requirements of section 1515.
(b) Such foreign proceeding shall be recognized—
  (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or
  (2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

11 U.S.C. § 1517(a)–(b). The Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).

---

[5] "Section 1509 of the Code erects a structure in which the foreign representative passes through the bankruptcy court for a recognition decision, the specified consequences of which are that the foreign representative gains the capacity to sue and be sued in United States courts and the authority to apply directly to a court in the United States for appropriate relief, and that all courts in the United States must grant comity or cooperation to the foreign representative." *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 44 (Bankr. S.D.N.Y. 2008). Geden asserts that Balzan seeks recognition for four main purposes: (1) to determine who has been controlling Geden during the pendency of its liquidation and to take appropriate action to secure control of any further Geden operations in the United States; (2) to identify and preserve any assets of Geden located in the United States; (3) to identify, preserve, and potentially prosecute any claims and causes of action related to the misappropriation of Geden's liquidation in the United States; and (4) to stay the appeal in the Pennsylvania state court action and avoid any loss of Geden's rights due to an unauthorized party acting on its behalf. (Docket Entry No. 6 at 31; *see also* Bankr. Docket Entry No. 26-8 ¶ 44).

It defines a "foreign nonmain proceeding" as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5).

"The phrase 'center of main interest' ("COMI") is a term of art, which the Bankruptcy Code does not define explicitly."  *In re Ran*, 607 F.3d at 1022.  Chapter 15 "does provide that '[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests.'"  *Id.* (citing 11 U.S.C. § 1516(c)).  "This presumption can be rebutted by evidence to the contrary."  *Id.*  The Code does define "establishment," however, which it states is "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  "'[T]he bar is rather high' to prove that a debtor has an establishment in a particular location."  *In re Ran*, 607 F.3d at 1026–27 (quoting *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008)).

**B.  The Bankruptcy Court's Decision**

The Bankruptcy Court concluded that the Maltese Proceeding was neither a foreign main nor a foreign nonmain proceeding.  (Bankr. Docket Entry No. 57 at 19–20).  The Bankruptcy Court began by noting that because the question of whether a proceeding should be recognized under Chapter 15 is an independent determination that the court must make regardless of any objections, it did not need to decide the motion to strike before ruling on the petition for recognition.  (Bankr. Docket Entry No. 57 at 8–9).  Because the Bankruptcy Court had the authority to "consider any and all relevant facts (including facts not yet presented)," it reviewed the facts and arguments that Advantage Award presented, even though it did not make a formal ruling on Advantage Award's standing.  (*Id.* at 8 (quoting *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008)).

The Bankruptcy Court next concluded that the Maltese Proceeding was not a foreign main proceeding.[6]  Before the Bankruptcy Court, Geden first argued that the § 1516(c) presumption controlled because Advantage Award had provided no affirmative evidence showing Geden's COMI was anywhere but Malta.  (Bankr. Docket Entry No. 57 at 9).  The Bankruptcy Court explained that the § 1516(c) presumption only applies in "easy cases" and did not apply when, as in this case, the issue was substantially disputed.  (*Id.* at 9–10).  The Bankruptcy Court noted that Geden's "complicated operational history" strengthened the need for the court to make its own determination of Geden's COMI based on a careful review of the facts presented.  (*Id.* at 11).

Geden argued that is COMI was Malta because (1) it was registered as a corporation under Maltese law, (2) the Maltese Court has been administering the proceeding since 2017, (3) Balzan—the only person in control of Geden—resides and works in Malta, (4) over the previous nine years, Geden had no other operations in any other jurisdiction, (5) even before Balzan arranged funding and sought authority from the Maltese Court to bring the Chapter 15 case, Malta was Geden's only remaining place of business activity, and (6) the law of Malta would apply to most disputes relating to Geden.  (*Id.* at 11–12).  Eclipse's memo in support of the petition for recognition provided additional facts tying Geden to Malta.  (*Id.*).  According to Eclipse's memo, Geden owned fifty subsidiaries that owned vessels, and each subsidiary was a Maltese company that filed its financial statements in Malta.  (*Id.* at 12).  The financing for these vessels was secured by Maltese ship mortgages, and these vessels were registered in Malta and flew the Maltese flag.  (*Id.*).  Geden paid tonnage taxes in Malta but did not pay any taxes in Turkey.  (*Id.*).  Eclipse's memo stated that

---

[6] It was undisputed that the Maltese Proceeding was a foreign proceeding under 11 U.S.C. § 101(23); the question was whether it was a foreign main or foreign nonmain proceeding.  (Bankr. Docket Entry No. 57 at 9 & n.4).

Geden had sent correspondence to its bankers from a Malta address in September 2022 and December 2023 but provided no evidence of that correspondence. (*Id.* at 13).

The Bankruptcy Court found much of this evidence irrelevant, however, because COMI is determined as of the petition date.[7] (*Id.*). The Bankruptcy Court concluded that the "only evidence presented by Geden or Eclipse with respect to the relevant time period is Dr. Balzan's presence in Malta and work as a Foreign Representative and Liquidator in Malta." (*Id.*). Relying on *In re Creative Finance Ltd.*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016), the Bankruptcy Court noted that "[f]or the Chapter 15 case to qualify as a foreign main proceeding, the relevant inquiry is whether Dr. Balzan engaged in significant pre-Petition work to operate or liquidate Geden in Malta." (*Id.*). The Bankruptcy Court also looked at "the period between the initiation of the foreign liquidation proceeding and the Petition Date" to "ensure no manipulation of Geden's COMI." (*Id.*).

The Bankruptcy Court noted that Balzan testified that when he was appointed, he learned that Geden had been defending itself in Pennsylvania state court for years, and he filed an appeal in that litigation. (*Id.*). The Pennsylvania court dismissed the appeal for lack of standing, and all his related challenges to the state court rulings were rejected. (*Id.*). The Bankruptcy Court further noted that Balzan testified that in his role as liquidator, he has not paid taxes, brought legal actions outside the Chapter 15 case, or reached out to any former officers or directors of Geden, which he had conceded were the general responsibilities of a liquidator in a Maltese proceeding. (*Id.* at 17). Balzan also admitted that he had not sought discovery of any parties outside the United States in his 16 months as Liquidator and Foreign Representative. (*Id.*).

---

[7] The Bankruptcy Court also declined to defer to Eclipse's support of COMI in Malta. (Bankr. Docket Entry No. 57 at 12).

Based on its careful review of this evidence, as well as the persuasive authority of *In re Creative Finance Ltd.*, the Bankruptcy Court concluded that the Maltese Proceeding was not a foreign main proceeding. The Bankruptcy Court explained that if Balzan had made a "material effort" in his role as Liquidator, the result might be different, but because Balzan's own testimony showed that he had not satisfied the general duties of a liquidator, his actions did not establish Geden's COMI in Malta as of the Petition Date. (*Id.* at 18–19). The Bankruptcy Court also found no evidence that Geden had tried to manipulate its COMI. (*Id.* at 19).

The Bankruptcy Court then concluded that the Maltese Proceeding was not a foreign nonmain proceeding. (*Id.* at 20). The Bankruptcy Court found no evidence that Geden had a place of operations in Malta as of the petition date, that it was conducting business in Malta as of the petition date, or that Balzan's actions had an effect on the Malta marketplace as of the petition date. (*Id.* at 19). Without this evidence, the Maltese Proceeding could not be a foreign nonmain proceeding. Because the Maltese Proceeding was not a foreign main or foreign nonmain proceeding, the Bankruptcy Court denied the petition for recognition. (Docket Entry No. 58).

### C. The Issues on Appeal

#### 1. Advantage's Standing

Geden first argues that the Bankruptcy Court erred by not deciding whether Advantage Award had standing to participate before deciding the merits. (Docket Entry No. 6 at 41). As the Fifth Circuit has explained,[8] "[e]ven in the absence of an objection, courts must undertake their

---

[8] Geden acknowledges that the Bankruptcy Court had an independent duty to determine whether the COMI presumption exists but then argues (with no citations) that this duty "d[id] not excuse the Bankruptcy Court from refusing to determine the threshold issue of standing or a party's right to be heard." (Docket Entry No. 11 at 11). That argument ignores the Fifth Circuit's requirement that—regardless of an objection— courts "must undertake their own jurisdictional analysis" and determine for themselves the relevant facts and law. *In re Ran*, 607 F.3d at 1021. Geden's citations elsewhere in support of its argument that the

own jurisdictional analysis and grant or deny recognition under Chapter 15 as the facts of each case warrant." *In re Ran*, 607 F.3d at 1021. A court may "consider any and all relevant facts (including facts not yet presented)" when determining whether to recognize a proceeding under § 1517. *In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 40. "[R]ecognition under Section 1517 of the Bankruptcy Code is not a 'rubber stamp exercise.'" *In re Ran*, 607 F.3d at 1021 (quoting *In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 40).

Because the Bankruptcy Court had an independent duty to consider the relevant facts and law even in the absence of an objection, it did not need to rule on the motion to strike before it ruled on the petition for recognition and did not err by considering Advantage's arguments and evidence.[9] *Id.*; *see also In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 52 (finding support for the court's independent duty to consider the facts and law following a failure to object and noting that "commentators—including members . . . of the Model Act and chapter 15 drafting groups—have (so far as this Court can tell, uniformly) endorsed" the view "that the court always has the power to make its own determination on qualification under section 1517"). "The ultimate burden of proof on the requirements of recognition is on the foreign representative." *In re Ran*, 607 F.3d at 1021. Geden cannot avoid its burden by attempting to bypass the Bankruptcy Court's responsibility to conduct its "own jurisdictional analysis" based on all facts and law available. *Id.*

### 2. The COMI Presumption

Geden next argues that the Bankruptcy Court misapplied the § 1516 presumption. (Docket Entry No. 6 at 51). Section 1516(c) states that "[i]n the absence of evidence to the contrary, the

---

Bankruptcy Court erred by failing to decide Advantage's standing first are all inapposite; none consider the Chapter 15 independent duty articulated in *In re Ran.*

[9] That there *was* an objection in this case—and then a motion to strike that objection—does not change the analysis. Objection or no objection, motion to strike or no motion to strike, the Bankruptcy Court had an independent duty to determine whether the requirements for recognition under § 1517 were satisfied.

debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Geden argues that the Bankruptcy Court erred by (among other things) concluding that the § 1516 presumption did not apply when a case was not an "easy" because the presumption is "mandatory" and is not limited to such cases. (Docket Entry No. 6 at 58).

The Bankruptcy Court did not err by declining to apply the § 1516 presumption. This presumption exists "[f]or speed and convenience in instances in which the COMI is obvious and undisputed." *In re Creative Fin. Ltd.*, 543 B.R. at 515. This presumption "save[s] stakeholders costs in straightforward cases, but does not tie the hands of a court to examine the facts more closely in any instances where the court regards the issues to be sufficiently material to warrant further inquiry." *In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 53. "[W]hile recognition *may* be granted under a section 1516 presumption (and often that will be appropriate and in the joint interests of parties and the court), the Court cannot agree that it *must* be granted." *Id.* at 55. "[R]eliance on the presumption is especially inappropriate in a case where there is a substantial dispute." *In re Creative Fin. Ltd.*, 543 B.R. at 517.

The Bankruptcy Court faced hundreds of pages of documents, arguments from Advantage Award that Geden's COMI was in Turkey (and that Malta was nothing but a letterbox jurisdiction), and days' worth of testimony and oral arguments addressing the inactivity of Balzan and his predecessor as liquidators in Malta. (*See, e.g.*, Bankr. Docket Entry Nos. 24, 25, 26, 44, 47, 55). Even setting aside the disputes as to whether the Bankruptcy Court should have relied on the Performance Guarantee as evidence that a dispute as to whether Geden's COMI was in Turkey

rather than Malta[10] or referred to Geden's "complicated operational history," that Balzan and his predecessor took no action in Malta *is* sufficient evidence to defeat this "labor saving presumption."[11]  *In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 55; *see also id.* at 50 (denying unopposed summary judgment on the issue of COMI regardless of the § 1516 presumption because the foreign representatives had failed to submit sufficient information relevant to the debtor's COMI for the court to make a determination).  Because the court rejects Geden's argument that Advantage Award should not have been allowed to present evidence or arguments before the Bankruptcy Court, the court rejects the arguments that the Bankruptcy Court could not (and this court cannot) consider that evidence and arguments, including Advantage Award's cross-examination of Balzan, when evaluating whether to apply the § 1516 presumption.

The § 1516 presumption is merely a tool "designed to make recognition as simple and expedient as possible" "where there is no serious controversy."  *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 635 n.8. (Bankr. E.D. Cal. 2006).  The presumption "does not shift the risk of nonpersuasion, i.e, the burden of proof, away from the foreign representative seeking recognition as a main proceeding."  *Id.* at 635.  The Bankruptcy Court correctly recognized its own case, *In re Telefónica del Perú S.A.A.*, No. 25-90022 (ARP) (Bankr. S.D. Tex. Feb. 25, 2025), as an example of an appropriate case to apply the § 1516 presumption.  (Bankr. Docket Entry No. 57 at 10).  In *In re Telefónica*, there was extensive evidence of the Chapter 15 debtor's connections with Peru,

---

[10] In a footnote, the Bankruptcy Court noted that evidence of a dispute "[f]or example" included a Performance Guarantee entered between Geden and Eclipse on Geden letterhead that included an address in Malta, but a mailing address in Istanbul, Turkey.  (Bankr. Docket Entry No. 57 at 10 n.8).  Geden argues on appeal both that (1) this evidence was not offered for its truth, so the court should not have reviewed it as evidence of a dispute, and (2) because it relates to Geden's operational history, it is irrelevant anyway if COMI is only determined as of the petition date.  (Docket Entry No. 6 at 58–60).

[11] For the reasons explained below, the court concludes that looking at Balzan's (lack of) liquidation efforts is appropriate when reviewing COMI.

including evidence that the debtor both was organized and active in Lima, that its operating decision were made in Lima, that its management and senior staff were located in Lima, and that capital expenditure decisions affecting the Chapter 15 debtor were managed in Lima. (*Id.* at 10–11 & 10 n.9). That example is in line with the kind of "[s]imple" cases in which other courts have applied the presumption. *See, e.g.*, *In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 54–55 (explaining the "prototypical example of the kind of petition that would be satisfactory" for applying the § 1516 presumption, which the court contrasted with the more complicated case before it). Because there is evidence to the contrary and a dispute as to whether Geden's COMI was in Malta, the Bankruptcy Court did not err in finding that the presumption did not apply.

### 3. The Foreign Main Proceeding Analysis

The next issue is whether the Bankruptcy Court erred by analyzing Geden's COMI based on Balzan's liquidation activities.[12] Relying on *In re Creative Finance Ltd.*'s interpretation of the Second Circuit case *In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir. 2013), the Bankruptcy Court found that because Balzan did not make any material efforts as a liquidator, COMI in Malta was not established. (Bankr. Docket Entry No. 57 at 18–19).

---

[12] Geden does not argue that the Bankruptcy Court erred by concluding that the Maltese Proceeding was not a foreign nonmain proceeding. (*See generally* Docket Entry Nos. 6, 11). To the extent that one of Geden's headings in its opening brief does assert that the Bankruptcy Court erred by not finding that the Maltese Proceeding was a foreign nonmain proceeding, (*see* Docket Entry No. 6 at 51), that appears to be a mistake; no substantive arguments about the Maltese Proceeding's qualifications as a foreign nonmain proceedings are presented in the body of the brief. Nor does Geden respond to Advantage Award's argument that Geden does not dispute that the Maltese Proceeding is not a foreign nonmain proceeding. (Docket Entry No. 19 at 14 n.16; *see generally* Docket Entry No. 11). The court concludes that Geden has waived any arguments that the Bankruptcy Court erred by concluding that the Maltese Proceeding was not a foreign nonmain proceeding. *See In re Glob. Clean Energy Holdings, Inc.*, Civ. Action No. H-25-3616, 2026 WL 1459905, at *10 n.21 (S.D. Tex. May 25, 2026). In any event, the court agrees with the Bankruptcy Court's conclusion that that the Maltese Proceeding is not a foreign nonmain proceeding. The record evidence shows "no nontransitory business activity" in Malta; there is no showing that Geden had an "establishment" there. *In re Creative Fin. Ltd.*, 543 B.R. at 521.

Geden argues that the Bankruptcy Court should not have relied on the "'liquidation activities' test"[13] laid out in *In re Creative Finance Ltd.* because that test applies only when a "tiebreaker" is needed "between two viable COMI locations" or when the court needs to determine "where a COMI switched from one jurisdiction to a 'letterbox' jurisdiction." (Docket Entry No. 6 at 65). Geden argues that the Bankruptcy Court should have evaluated its COMI based on the *SPhinX* factors.[14] (*Id.* at 66). These factors include "the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably, could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *See In re Ran*, 607 F.3d at 1023 (quoting *In Re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bank. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

COMI is determined at "the time the petition for recognition was filed." *Id.* at 1025. The question is the extent to which the Bankruptcy Court should have, and this court should, examine Geden's liquidation activities in determining its COMI when the Chapter 15 petition was filed. As the Bankruptcy Court recognized, the most helpful cases are *In re Fairfield Sentry Ltd.* and *In re Creative Finance Ltd.*[15] In *In re Fairfield Sentry Ltd.*, the Second Circuit clarified that "any relevant activities, *including liquidation activities and administrative functions*, may be considered in the COMI analysis." 714 F.3d at 137 (emphasis added). The Second Circuit noted that considering the *SPhinX* list of factors is "neither required nor dispositive." *Id.* The Second Circuit

---

[13] Geden refers to the analysis in *In re Fairfield Sentry Ltd.* and *In re Creative Finance Ltd.* as the "'liquidation activities' test." (*See, e.g.*, Docket Entry No. 6 at 61). This term—"liquidation activities test"—does not come from either case (which mention "liquidation activities," but not a "test").

[14] Geden refers to these factors as the *Ran/SPhinX* factors because the *In re Ran* court explained and applied them. Like other courts, this court simply calls them the *SPhinX* factors.

[15] Neither case is binding on this court, but the court may, of course, consider them persuasive authority.

then affirmed the bankruptcy court's determination that the relevant entity's COMI was the British Virgin Islands, relying primarily on a review of the "administration of its affairs" when the petition was filed and the absence of bad-faith COMI manipulation. *Id.* at 139.

In *In re Creative Finance Ltd.*, the Bankruptcy Court for the Southern District of New York examined the increasing trend of courts "readily grant[ing] recognition to proceedings emanating from letterbox jurisdictions based on the foreign representatives' material efforts to manage or liquidate their debtors' businesses before coming to the U.S." 543 B.R. at 518. The opinion noted cases finding that "when a foreign representative relocates all of the primary business activities of a debtor to his or her location, the COMI 'may become lodged with the foreign representative.'" *Id.* at 519. In the case before it, however, the liquidator's "efforts were so minimal that the Court cannot find the necessary change in COMI"; in the two months between when the liquidator was retained and when he filed his Chapter 15 case, he "failed to do the basic things that can under normal circumstances cause a change in COMI—even in liquidation." *Id.* Any potential bad faith "was not germane" to the analysis. *Id.*

These cases establish—as the Bankruptcy Court recognized—that the administration of liquidation affairs can be a key part of the COMI analysis. Despite Geden's assertion that the Bankruptcy Court contravened Fifth Circuit precedent by failing to mechanically apply the existing *SPhinX* factors, in *In re Ran*, the Fifth Circuit stated that the *SPhinX* factors are "non-exhaustive" and that, at most, they offer a "useful analytical framework" for a corporate debtor; the Fifth Circuit also recognized that in cases in which the facts differ from those presented in *SPhinX*, "the relevant factors . . . may be somewhat different." 607 F.3d at 1024. Like the Bankruptcy Court, this court concludes that liquidation activities and administrative functions may be included in the COMI analysis. These activities are relevant not only to "tiebreakers" or

14

letterbox jurisdiction analyses (a proposition for which Geden cites no authority), but for determining COMI in liquidation proceedings when there has been either significant (*In re Fairfield Sentry Ltd.*) or minimal (*In re Creative Finance Ltd.*) liquidation activities.

Here, as in *In re Creative Finance Ltd.*, the liquidator has taken almost no relevant liquidation activities.  Balzan testified that his duties as a liquidator in a Maltese proceeding would be to meet with creditors, identify assets, distribute assets, pay taxes, and bring causes of action. (Bankr. Docket Entry No. 44 at 31:18–33:1; *see also* Bankr. Docket Entry No. 6 ¶ 14).  Balzan further testified that he has not paid taxes, pursued causes of action or participated in legal proceedings outside the Pennsylvania proceeding and this Chapter 15 proceeding, convened any creditor meetings, or reached out to Geden's former officers or directors.[16]  (Bankr. Docket Entry No. 44 at 33:2–34:1).  Balzan had no knowledge of any liquidation activities occurring between September 2018 and his appointment as liquidator in December 2023.  (*Id.* at 41:13–22).  The only discovery that had occurred since his appointment was of parties in the United States.  (*Id.* at 77:8–21).  As the Bankruptcy Court further recognized, Geden presented no evidence of any other activity in or ties to Malta during the relevant period other than Dr. Balzan's (minimal) work as foreign representative and liquidator.[17]  (Bankr. Docket Entry No. 57 at 13).

---

[16] The Bankruptcy Court concluded, and Advantage Award agreed, that Balzan had acted in good faith. (*See* Bankr. Docket Entry No. 57 at 18 n.18; Bankr. Docket Entry No. 55 at 12:8–18).  The Bankruptcy Court explained that Balzan's testimony "may be explained by the fact that his appointment came after many years of inactivity in the Maltese Proceeding," but that "while inactivity and the passage of time may be an explanation, it is not an excuse."  (Bankr. Docket Entry No. 57 at 18 n.19).

[17] In a footnote, Geden points out that the Bankruptcy Court had recognized that Geden owned subsidiaries that owned vessels and that these vessels had ties to Malta, but does not acknowledge the Bankruptcy Court's conclusion that any activity involving those vessels took place outside the relevant time period. (Docket Entry No. 6 at 63 n.8; Bankr. Docket Entry No. 57 at 13).  Further, although Geden argues that the evidence shows the *SPhinX* factors cut in its favor, (Docket Entry No. 6 at 62–63), most of its examples purportedly showing that it met those factors merely refer back to Balzan's minimal actions.

Because there is no evidence of more than minimal liquidation and administrative activity in Malta since the petition was filed, or other evidence as to Geden's ties to Malta during the relevant period, Geden has not met its burden of proving that its COMI is in Malta.[18]  *See In re Creative Finance Ltd.*, 543 B.R at 522 ("[R]ecognition turned solely on the requirements of section 1517, and the Liquidator's failure to show a COMI (or establishment) in the [British Virgin Islands], by reason of his minimal effort in managing the Debtors' affairs."); *In re Ran*, 607 F.3d at 1021.  The question in *In re Creative Finance Ltd.* was not where COMI actually was (the court never determined if it was Spain, Dubai, or the United Kingdom), but only whether there was "sufficient activity" in the British Virgin Islands for the court to conclude that the COMI was in the British Virgin Islands.  *Id.* at 526; *see also id.* at 511 n.80.  Geden had the burden to establish that its COMI was in Malta.  It cannot meet that burden by arguing that another party or entity failed to show that its COMI was elsewhere.  (*See, e.g.*, Docket Entry No. 6 at 63 ("Advantage Award offered no evidence that Geden's COMI was in any jurisdiction other than Malta.").  This court agrees with the Bankruptcy Court that, based on the facts of this case, the Maltese Proceeding is not recognized a foreign main proceeding subject to recognition under the Bankruptcy Code.

---

[18] The court may look at the period after the liquidation proceeding began and before the Chapter 15 petition was filed to see if there has been a bad-faith attempt to manipulate COMI.  *See In re Fairfield Sentry Ltd.*, 714 F.3d at 133 ("To offset a debtor's ability to manipulate its COMI, a court may also look at the time between the initiation of the foreign liquidation proceeding and the filing of the Chapter 15 petition.").  No party argues that there has been any attempt at COMI manipulation, and, like the Bankruptcy Court, the court sees no evidence of such manipulation.

## IV.    Conclusion

The court affirms the Bankruptcy Court's order and Memorandum Opinion denying Geden's petition for recognition and dismissing the motion to strike as moot.  (Bankr. Docket Entry Nos. 57, 58).  This appeal is dismissed.

SIGNED on July 6, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge